# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 25, 2014          Decided July 24, 2015

No. 13-5170

JANET E. ALLEN,
APPELLANT

v.

JEH CHARLES JOHNSON, SECRETARY OF HOMELAND SECURITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-02228)

*Ellen K. Renaud* argued the cause for appellant. With her on the briefs was *David H. Shapiro*.

*Jeremy S. Simon*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: ROGERS, KAVANAUGH and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Plaintiff Janet Allen settled a pair of employment discrimination claims against the Department of Homeland Security, but soon began to suspect that her new supervisor, Kathy Hill, was retaliating against her for having asserted her rights. Allen's next performance rating was lower than she thought it should be, and she was not invited to meetings in which she thought she should be included as part of her job overseeing the internal financial control systems at U.S. Immigration and Customs Enforcement (ICE), an agency within the Department of Homeland Security. Allen filed this suit claiming Hill retaliated against her for the earlier discrimination complaints. The Department moved for summary judgment, asserting that Hill's explanations of her actions were legitimate and non-retaliatory. Hill justified the performance ratings on the ground that Allen, a managerial employee, failed adequately to supervise ICE's specialized satellite offices and external contractors, leading to delays on two projects and a complaint from one of the satellite offices. Hill also attested that Allen was never excluded from meetings at which her presence was required and that, if Allen had thought otherwise, she could have asked to attend meetings, but never did. Allen claimed that her own disagreement with Hill's assessment of her performance and with Hill's decisions about who to include in meetings created triable issues precluding summary judgment. Because we conclude that the proffered facts could not, if presented at trial, support a jury verdict that retaliation was Hill's real motive for the actions of which Allen complains, we affirm the district court's grant of summary judgment in favor of the Department.

## I. BACKGROUND

Relevant background to the current retaliation case began over a decade ago, when Allen worked as a Director of

Financial Management at ICE, overseeing financial systems there and at five other bureaus within the Department of Homeland Security. *Allen v. Napolitano* ("*Allen I*"), 774 F. Supp. 2d 186, 191 (D.D.C. 2011). In 2006, Allen filed an EEO complaint alleging a hostile work environment, discrimination on the basis of sex, age, and disability, and retaliation. *Id.* at 191-92. After Allen filed her first complaint, ICE reassigned her from that position to a posting as Director of Internal Controls in ICE's Office of Assurance and Compliance (OAC). *See id.* at 192. OAC evaluates and develops plans to improve ICE's internal financial controls and reports the results of internal control testing and other audit activities within the Department. Allen's job at OAC was to supervise certain financial controls tests and functions, including by managing contracts with outside accounting firms. *Allen v. Napolitano* ("*Allen II*"), 943 F. Supp. 2d 40, 43-44 (D.D.C. 2013). Allen filed a second EEO complaint in 2007 alleging that her reassignment to OAC was retaliatory. *See Allen I*, 774 F. Supp. 2d at 192.

In February 2008, the Department entered into a settlement agreement with Allen resolving her 2006 and 2007 complaints. *Id.* The settlement obligated ICE to give Allen a step promotion, provide her back pay, attorneys' fees and costs, and, based on a list of Allen's accomplishments, change her performance reviews for 2005–2007 to award her the highest performance rating. *Id.* Kathy Hill, Allen's new supervisor following her reassignment to OAC, held the position of Acting Director of OAC. The Department charged Hill with implementing the performance rating adjustments under the settlement agreement.

In this suit, Allen alleges that Hill and others retaliated against her in violation of Title VII of the Civil Rights Act of 1964 (codified as amended at 42 U.S.C. § 2000e *et seq.*), by

giving her an unfavorable performance review in 2008 (the fiscal year after the three covered by the settlement), and excluding her from important meetings to which Allen alleges she should have been invited.[1]

The district court granted summary judgment to the Department. The Department supported its motion by showing that the unfavorable performance ratings were based on Hill's determination that Allen failed adequately to oversee contractors and agency satellite offices whose compliance she supervised, missed deadlines for two projects, and that Hill did not exclude Allen from any meetings at which Hill understood her presence to be warranted. Allen argued that each of the Department's reasons was "unworthy of credence," *see Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (internal quotation marks omitted), and was put forward as a pretext for intentional retaliation. She disagreed with Hill's assessment of her performance on various projects, and contended, with some support from contractors' employees, that projects she supervised had been discussed at meetings without her. The court held that Allen failed to rebut the Department's justifications for her performance ratings, *Allen II*, 943 F. Supp. 2d at 48-52, and that the claimed exclusions from meetings were not actionable employment decisions, *id.* at 45-47.

On appeal, Allen challenges the grant of summary judgment on those claims. We review de novo the district court's decision. *McGrath v. Clinton*, 666 F.3d 1377, 1379 (D.C. Cir. 2012).

---

[1] The district court had earlier entered partial summary judgment on other retaliation claims not at issue here. *See Allen I*, 774 F. Supp. 2d at 206.

## II. LEGAL STANDARD

Summary judgment is appropriate only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). At summary judgment, the court must avoid weighing the evidence and making credibility determinations. We instead assume all conflicts would be resolved and all inferences drawn in the nonmoving party's favor and inquire whether, on the evidence so viewed, "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Title VII prohibits federal agencies from discriminating against their employees on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-16(a), and forbids retaliation against an employee because she has "opposed any practice made an unlawful employment practice by" Title VII, or because she "made a charge" under Title VII, *id.* § 2000e-3(a).[2] To prove unlawful retaliation, an employee must establish three elements: that she made a charge or opposed a practice made unlawful by Title VII, that the employer took a materially adverse action against her, and that the employer took the action because of her protected conduct. *McGrath*, 666 F.3d at 1380. Our analysis at summary judgment tracks that of the trier of fact at trial. In other words, a plaintiff seeking to defeat summary judgment on her retaliation claim must point to evidence from which a reasonable juror could

---

[2] Title VII contains separate provisions, slightly differently worded, prohibiting discrimination by private employers and governmental agencies, but this court has construed them as imposing the same restrictions and cites the cases construing them interchangeably. *George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005).

conclude that the employer took adverse employment action against her in retaliation for her protected activity.

Cases asserting unlawful retaliation in violation of Title VII typically depend on circumstantial evidence of retaliatory motive. Direct evidence of reprisal—such as a statement by a managerial employee that she or he took action because an employee had filed a charge of discrimination—is the exception rather than the rule.[3] A Title VII plaintiff may raise a preliminary, circumstantial inference of prohibited motive through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under *McDonnell Douglas*, a retaliation plaintiff need only show that she engaged in protected activity, that she suffered an adverse employment action, and that there was a causal link between the former and the latter. *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012). The function of the prima facie case is to trigger the employer's burden to come forward with its actual legitimate, non-retaliatory reason for the challenged action. If the employer fails to do so, the employee is entitled to judgment.

Once the employer proffers a non-retaliatory reason for the challenged employment action, the burden-shifting framework falls away, and the "central question" becomes whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory [or non-retaliatory] reason was not the actual reason and that the employer intentionally discriminated [or

---

[3] An example of that rare case is *Forman v. Small*, in which the recommending official stated that he did not make a promotion recommendation because the plaintiff "had already filed an EEO complaint" over an earlier non-promotion. 271 F.3d 285, 290, 300 (D.C. Cir. 2001).

retaliated] against the employee." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008); *see Jones*, 557 F.3d at 678 (applying *Brady* to retaliation claim).[4] A key component of retaliation cases, in common with discrimination claims, is thus the battle over pretext. This is the posture of Allen's case: the Department has put forth its reasons for the actions that Allen claims constitute retaliation. The question is thus whether those reasons are the actual reasons, or whether they are a mask for retaliation.

A plaintiff opposing summary judgment may raise an inference that the employer's purpose was retaliatory by pointing to evidence attacking the employer's proffered reasons, together with other evidence, if any, suggesting that retaliation was the real reason. Whether the available evidence suffices to support a jury finding of retaliation will, necessarily, be a contextual judgment.

There are multiple ways in which circumstantial evidence may support an inference that an employer's stated reason for a challenged employment action was not the actual reason, and that the real reason was prohibited discrimination or retaliation. The temporal proximity of an adverse action close on the heels of protected activity is a common and highly probative type of circumstantial evidence of retaliation. *See*

---

[4] To say that the burden-shifting framework falls away under *Brady* is not to suggest that the evidence supporting the prima facie case loses relevance. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (noting that, "although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual'") (citations, ellipsis omitted).

*Hamilton*, 666 F.3d at 1357-59. Other common ways of proving invidious motive—whether retaliation or discrimination—include pointing to evidence that the employer treated other, similarly situated employees better; that the employer is "lying about the underlying facts" of its decision; that there were "changes and inconsistencies" in the employer's given reasons for the decision; that the employer failed to "follow established procedures or criteria"; or that the employer's "general treatment of minority employees" (or, in the retaliation context, employees who asserted their Title VII rights) was worse than its treatment of non-minorities (or employees who did not assert their Title VII rights). *Brady*, 520 F.3d at 495 & n.3. Invidious motive may also be inferred from "'an error too obvious to be unintentional.'" *Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 26 (D.C. Cir. 2013) (quoting *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996)).

Typically, successful rebuttal of an employer's stated reason counts as evidence of the invidious motive that is a required element of a disparate treatment or retaliation claim. *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005). As just noted, it is often reasonable to think that an employer who lies or obviously bluffs about or shifts its rationale for challenged action is culpable of the charged discrimination or retaliation. Evidence that an employer's proffered reasons are "unworthy of credence," *Jones*, 557 F.3d at 678 (internal quotation marks omitted), has "considerable evidentiary significance" because "a lie is evidence of consciousness of guilt," *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1292-93 (D.C. Cir. 1998) (*en banc*); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). But that is not inevitably the case. Successfully attacking an employer's proffered reason "alone will not always suffice to permit an inference of discrimination." *Aka*, 156 F.3d at 1292; *see also*

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). Under the standard for judgment as a matter of law, which tracks the standard for summary judgment, the Supreme Court has observed that judgment in an employer's favor is appropriate where the plaintiff's evidence calling the employer's proffered reason into doubt is weak, and the record also contains "abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148 (citing *Aka*, 156 F.3d at 1291-92). We have also recognized that summary judgment against the plaintiff is appropriate if the plaintiff's showing of fabrication by her employer "conclusively demonstrates that the real explanation for the employer's behavior is not discrimination, but some other motivation." *Aka*, 156 F.3d at 1290-91.

This case addresses a particular kind of contest over pretext: Disagreement between a middle manager and her immediate supervisor over the validity of discretionary judgments about the subordinate's job performance. Title VII requires us to be vigilant in smoking out unlawful motives while remaining "reluctan[t] to become involved in the micromanagement of everyday employment decisions." *Forman v. Small*, 271 F.3d 285, 291 (D.C. Cir. 2001). There were no relevant comparators under Hill's direct supervision. There was no established track record of Hill's treatment of Allen before she filed her EEO complaints, because it was only thereafter that Allen was transferred and placed under Hill's supervision. There are no witnesses other than Allen whose testimony supports her claims. Allen's testimony is itself competent evidence, of course, but the facts that it seeks to call into question are Hill's judgments as to whether Allen was a sufficiently communicative and active manager, and which of Hill's meetings would address technical aspects of contracts under Allen's purview such that Allen should be in attendance. In other words, each is very much a discretionary

judgment call about one manager's supervision of another. Invidious motive is especially tricky to establish in such circumstances because judicially wieldy metrics of fair treatment are difficult for plaintiffs to establish. It is where the non-retaliatory or non-discriminatory baseline is elusive of proof that courts are most apt to hesitate to invade employers' discretion in workplace management. *See Fischbach*, 86 F.3d at 1183. "If the employer's stated belief about the underlying facts is reasonable in light of the evidence," and is honestly held, there ordinarily is no basis to put the case to a jury, even if the employee disagrees with the discretionary decision the employer made. *Brady*, 520 F.3d at 495; *see George*, 407 F.3d at 415.

### III. ANALYSIS

Allen urges us to find that the Department unlawfully retaliated against her in the months following the settlement of her earlier discrimination and retaliation claims, but the evidence falls short of raising an inference of retaliatory purpose. Allen claims she deserved a higher performance rating than the one Hill gave her and that she should have been invited to certain meetings that she asserts were essential to her job duties. Allen has explained why she disagrees with Hill's proffered justifications for the challenged actions, but mere disagreement with an employer about reasonable judgments concerning the employee's evaluation and meeting participation—judgments that are especially subject to managerial discretion—is not enough to sustain a Title VII claim. Allen must identify facts from which a reasonable jury could conclude that Hill's justifications for the contested performance rating and meeting-composition decisions were not her real reasons, but were instead pretexts for retaliation. Because Allen has not raised a genuine dispute of fact as to whether Hill honestly and reasonably believed the legitimate,

non-retaliatory reasons she gave for her treatment of Allen, the district court did not err in granting the Department's motion for summary judgment.

## A. Performance Review

Allen's 2008 performance review period began in October 2007 and ended September 30, 2008. Hill rated Allen on four "performance goals." Of those four goals, Allen received the highest rating (Achieved Excellence) on two of them, but only the next-highest rating (Exceeded Expectations) on another, and the third-from-highest rating (Achieved Expectations) on a fourth. Her overall rating—combining scores on her achievement of those four goals with scores on seven "core competencies"—was at the Achieved Expectations level. Allen challenges two of her performance goal ratings, which affected her overall rating, and Hill's failure to provide Allen a mid-year performance review as unlawful retaliation.

**1. Performance Goal 2.** Allen contends that she deserved a rating of Achieved Excellence rather than Exceeded Expectations on Performance Goal 2, regarding her performance in preparing ICE for a 2009 audit. 2008 Perf. Rev., J.A. 183, at 3-5. The Department gave two reasons for the rating.

First, Hill wrote in Allen's performance review that Allen failed to communicate adequately with "subject matter experts" over her changes to documentation relating to budget and payroll systems. *Id.* at 14-15. The "subject matter experts" at issue were at ICE's finance center in Burlington, Vermont, where invoices are paid and payments to ICE are processed. *See* Allen Decl., J.A. 559 ¶¶ 3-4. According to Hill, the finance center complained that Allen made changes to drafts of documents without consulting them or explaining

the changes, resulting in confusion at the finance center as to how to respond. Hill Decl., J.A. 478 ¶ 17. Allen has not disputed that the finance center complained. Instead, she argues that the complaint was not her fault, because, she says, Hill never notified her of the requirement that she collaborate with the finance center. But Performance Goal 2 of Allen's performance plan—which Hill developed with Allen's detailed input and review—required Allen to collaborate with the ICE "Program Offices" to ensure a successful audit. 2008 Perf. Rev. at 3-4. Allen asserts Hill's definitions were ambiguous and made it unclear what her responsibilities were in dealing with the Burlington Finance Center, but Hill avers that ICE finance centers were routinely referred to as both "Program Offices" (components within ICE) and "subject matter experts" (entities whose staff were most knowledgeable about the processes Allen was evaluating), and thus were clearly entities included in Allen's Performance Goal. Hill Decl. ¶ 9. Allen provides no further response to Hill's assertions that Allen knew or should have known that the Burlington Finance Center was among the entities with which she was expected to communicate.

Allen also argues that it would have been inappropriate to communicate at that time with the Burlington Finance Center about the 2009 audit because that center was the subject of the audit Allen was managing, and "[a]s a general matter, an auditee does not have input into the auditor's evaluation of their work." Allen Decl. ¶ 4. But Allen identifies no evidence showing that she was auditing the Burlington Finance Center, and the Department's evidence refutes that contention. *See* Supp. Hill Decl., J.A. 563 ¶ 4 ("While our office did audit-related work, the ultimate audit was performed by KPMG."). Even if Allen were correct that it would have been inappropriate for her to collaborate with the finance center, there is no evidence that she brought any such

concern to Hill's attention. And even if Allen had established that her Performance Goal did not encompass collaborating with the finance center, she has failed to identify a material issue of fact in dispute because she points to nothing that suggests that Hill's putative error on that score was either dishonest or unreasonable. Allen's effort to dispute the scope of her duties as a basis for the challenged performance rating thus raises no inference of retaliatory motive. To the contrary, after having maintained throughout this litigation that she was not aware that collaboration was required, and that any collaboration with the finance center would have been inappropriate, Allen asserts in her reply brief that she *did in fact* collaborate with the finance center. Allen Reply Br. 13.

Hill provided a second, independent justification for the Performance Goal 2 rating: delays in the administration of an internal financial control test called the "Test of Operating Effectiveness." Hill wrote in Allen's performance review that Allen failed adequately to oversee and coordinate with PricewaterhouseCoopers, an ICE contractor working on the test. 2008 Perf. Rev. at 15. Hill "believed that if [the project] had been managed effectively, it could have been completed in the original deadline[]." Hill Decl. ¶ 18. Allen claims the delays were actually due to "a significant expansion of the scope of the project midway through"—an expansion Allen says she recommended against. Allen Decl. ¶ 5. She produced no evidence, however, that Hill lacked grounds for expanding the project, let alone that Allen predicted and timely advised steps to avoid the delays she concedes befell the project. Hence, she has failed to identify any material factual dispute about the validity of Hill's criticism.

Allen also claims that Hill excluded her from meetings with PricewaterhouseCoopers, and that those exclusions

contributed to any "lack of oversight and coordination" of that contractor's work. The meetings from which Allen claims she was excluded occurred after the 2008 review period closed, however, and are therefore irrelevant to her challenge to the performance ratings. Allen's suggestion that she did, in fact, fail adequately to coordinate with the contractors, but that it was Hill's fault she did so, undermines her argument that no lack of coordination occurred and that the delays were due to the expanded scope of the project. In sum, Allen has not identified record evidence upon which a reasonable jury could conclude that Hill's rating of Allen on Performance Goal 2 was done in retaliation for Allen's prior protected conduct.

**2. Performance Goal 3.** Hill asserted that Allen's rating of Achieved Expectations on Performance Goal 3, rather than the Achieved Excellence rating Allen believed she deserved, was similarly based on her evaluation of Allen's oversight of ICE finance centers during a project that required the collection of documents from those centers for testing; delays in document collection resulted in delays in the overall project. *See* 2008 Perf. Rev. at 5, 15; Hill Decl. ¶ 4. Allen does not dispute that the project delays were caused by a failure to get the documents from the finance center in a timely manner. Indeed, Allen initially blamed the delays on Hill, who Allen says made the "high risk decision" of assigning the testing work to the finance centers rather than to the two employees at the Office of Assurance and Compliance whom Allen directly oversaw. J.A. 510. Later, Allen blamed her subordinate, Melissa Crane, for the same delays, on the ground that Crane "was assigned as the project leader." J.A. 518. Allen avers that she did not intervene earlier because Crane never informed her of any problems. But the record shows that Allen was aware at least two months in advance that her office was having difficulty

getting the documents. *See* J.A. 511, 516. Allen made little progress to remedy the situation in those intervening months. Hill claims she personally had to "intervene in the situation and direct the efforts to locate the missing documentation to resolve the situation." Hill Decl. ¶ 21. Despite that "crisis," Hill gave Allen the Achieved Expectations rating and not a lower mark because, once arrangements were made to adjust the deadline, Allen was able to meet it. *Id*. Even if Allen were right that the delays were really caused by Hill's "high risk decision" or Crane's failure to inform Allen of the problems sooner, as a manager, Hill reasonably expected Allen to diagnose, communicate over, and forestall problems; record evidence raises no inference that Hill's judgments that Allen had failed adequately to do so were unreasonable or dishonest.

Allen also claims a jury could infer retaliation based on the fact that Hill approved the highest level rating for Crane, meaning that Crane received a higher rating than Allen for their work on the same project. Hill thought it was reasonable to rate Allen's subordinate more highly than Allen herself because it was Allen, not her subordinate, who had managerial responsibility. *Allen II*, 943 F. Supp. 2d at 51; *see also* Hill Decl. ¶ 22 (justifying rating on grounds that Allen "needed to take ownership, and not seek to deflect responsibility to those that she supervised"). Although Allen disagrees with the rating difference on its merits, she identifies no reason to question the genuineness of Hill's stated justification for the differential ratings.

**3. Mid-Year Review.** Allen also argues that Hill deviated from established Department of Homeland Security personnel procedure by failing to give Allen a mid-year performance review in the 2008 fiscal year, casting doubt on the authenticity of the reasons given for her performance

ratings. The record demonstrates that, under ordinary circumstances, supervisors were expected to give mid-year reviews. Keenan Dep., J.A. 311, at 37. Allen's evidence also shows that mid-year reviews were called for "halfway through the rating period," *id.*, but that Allen's performance plan was not finalized until May 2008, almost eight months into the performance period, Pl. St. Mat. Facts, J.A. 544 ¶ 8; Hill Decl. ¶ 11. Allen did not introduce evidence demonstrating that, under those circumstances, Department policy called for a mid-year review, and the Department has consistently maintained otherwise. Consequently, she has failed to raise a genuine dispute of material fact concerning her claim that Hill deviated from established procedures.

\* \* \*

Nothing in the record suggests that Hill did not genuinely and reasonably believe she made the right decision in the performance ratings she assigned to Allen, and in providing no mid-year review while the parties were negotiating Allen's performance goals. Given the lack of evidence tending to undermine the reasons given by Hill, summary judgment in favor of the Department on Allen's performance ratings claim was warranted.

## B. Meeting Exclusions

We also affirm the grant of summary judgment for the Department on Allen's claim of retaliatory exclusion from meetings, but on grounds different from the district court's. Because Allen failed to create any material factual dispute about the legitimate, non-retaliatory reasons the Department proffered, we do not address the question whether the challenged actions were insufficiently consequential to count as materially adverse, and thus adequate to support a claim of unlawful retaliation.

Allen lists a battery of meetings to which the Department concedes she was not invited. According to Hill, she did not include Allen in the listed meetings because they involved subjects that were not part of Allen's assigned duties, were high level meetings between Hill and her superiors at which Allen's presence was not appropriate, or were convened by Hill's superiors or others, not Hill. She also points out that Allen could have sought to participate in the meetings, but never did. Allen Dep., J.A. 358, at 33:13-34:17 (Aug. 14, 2012); *see also* Hill Decl. ¶ 33. Allen fails to identify evidence materially disputing Hill's explanations.

Allen focuses primarily on Hill's meetings with ICE contractor PricewaterhouseCoopers. She says the meetings involved discussions of ongoing work on a contract for which Allen was the Contracting Officer's Technical Representative (COTR), and that such discussions would have been inappropriate in the COTR's absence. Hill conceded the meetings took place, but said that they were held to discuss potential future business opportunities—a kind of meeting Allen acknowledges would not require her presence. Allen Dep. at 79:21-80:4. Allen maintains that Hill impermissibly discussed the ongoing PricewaterhouseCoopers contract at some of those meetings, and that two contractors complained to her that Hill had discussed the ongoing work in meetings. *Id.* at 76-77, 96.

The Department objects that Allen's testimony concerning what attendees told her about meetings is inadmissible hearsay. Def. Br. 57. Allen has made no effort to demonstrate that she could introduce the evidence in an admissible form at trial, such as through the testimony of the attendees themselves. *See Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007). The Department did not raise a hearsay objection before the district court, however, so that

objection is not preserved. *See Catrett v. Johns-Manville Sales Corp.*, 826 F.2d 33, 37-38 (D.C. Cir. 1987); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2722 (3d ed. 2015). In any event, Allen's recounting of what the contractors told her is corroborated by Hill's concession that "sometimes" contractors would update Hill on the status of ongoing work in Allen's absence. Hill Dep., J.A. 266, at 153:1-11. Hill thus may have breached protocol on occasion by discussing ongoing work without Allen, the COTR, in attendance.

Departure from established procedures can be probative of pretext, *Brady*, 520 F.3d at 495 n.3, but none of Allen's evidence suggests that Hill's alleged violation was any kind of conscious evasion. Allen does not assert that Hill lied about the content of the meetings or covered up what happened during them, or that Hill did not honestly and reasonably believe that she acted appropriately. If a supervisor's "stated belief about the underlying facts is reasonable in light of the evidence, . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Id.* at 495.

Allen's evidence concerning the remaining meetings also falls short. Hill met with ICE contractor Deloitte & Touche on subjects over which Allen had no responsibility. Allen Dep. at 24:5-12. And when Hill talked with Department personnel over the phone or in person without prior planning about matters relevant to Allen's responsibilities, she did not hide those meetings, but reported to Allen about them by e-mail. *See* J.A. 538 (Whalen meeting), 539 (Wetklow meeting), 542 (Mason meeting). Finally, nothing in the record supports Allen's contention that she should have been included in the high level meeting in December 2008 relating to the "Senior Advisory Team."

Allen contends that we may infer pretext from Hill's reliance on post-hoc rationales for the meeting exclusions. She asserts that Hill was unable during her deposition to explain her failure to invite Allen to the meetings, but that, when the Department moved for summary judgment ten months later, Hill submitted a declaration detailing reasons she had not mentioned previously. Allen Br. 35-36. Allen seeks to rely on our recognition that "changes and inconsistencies in the stated reasons for the adverse action" may give rise to an inference of pretext. *Brady*, 520 F.3d at 495 n.3. The record in this case, however, belies any inconsistency such as would raise an inference that the Department's proffered reasons were invented post hoc to cover up retaliatory motives. Hill's 2009 EEO declaration, signed three years before Hill's deposition, details several of the explanations that the Department now advances in litigation. Allen quibbles with the phrasing of some of those explanations, but Hill's EEO declaration and her summary judgment declaration are consistent in all material aspects. Moreover, Allen mischaracterizes Hill's purported failure to explain the meetings during her deposition. During the deposition, Hill repeatedly said that the bases for her decisions whether to invite Allen to a meeting depended on the specific meeting at issue, and frequently said that she did not understand Allen's counsel's confusing questions. *See, e.g.*, Hill Dep. at 130:22-131:1, 132:12-13, 132:17, 133:16, 137:2-8. When counsel asked her clearly about specific meetings, Hill had no difficulty explaining her decisions. *See, e.g.*, *id.* at 153:1-3. With respect to the few, truncated deposition excerpts regarding meeting attendance that are part of the record, Hill's explanations did not differ from those she gave both in her earlier EEO declaration and in her later summary judgment declaration.

Allen has failed to rebut Hill's proffered legitimate, non-retaliatory reasons for not inviting Allen to certain meetings. Hill has pointed to evidence from which a jury could conclude that she honestly and reasonably believed Allen's presence was either not required or inappropriate. Allen has failed to identify evidence from which a reasonable jury could not only disbelieve Hill's reasons, but conclude that the real reason Hill did not invite Allen to certain meetings and engaged in discussions about the ongoing contract work without Allen present was to retaliate against Allen for her protected activity.

## C. Other Allegations of Retaliation

Allen cites as further support for her retaliation claim incidents over and above the acts that she has identified as actionable adverse treatment, i.e., the performance ratings and non-inclusion in meetings. Allen contends that Hill's antagonism toward her began immediately upon Hill becoming aware of Allen's settlement of her earlier discrimination and retaliation claims. It fell to Hill, as Allen's new supervisor, to implement the settlement agreement. Allen contends that Hill did so in a grudging manner that, "while technically in compliance with the settlement agreement, may be viewed by a jury as intentionally designed to retaliate" against Allen. Allen Reply Br. 7. Allen asserts that Hill's approach to implementation of the settlement tends to show Hill's retaliatory motive and, together with the other evidence, supports her claim of unlawful reprisal. Allen also relies on the "entire course of Hill's treatment of Allen . . . beg[inning] almost immediately after Hill learned that Allen had engaged in EEO activity" to show such a motive. *Id.* at 8.

It is well established that evidence of a pattern of antagonism following closely on the heels of protected

activity and related to the challenged employment action may establish the causation element of a Title VII plaintiff's prima facie case. *See Hamilton*, 666 F.3d at 1357-59 (holding the requisite causation showing was made where plaintiff "was denied information about a possible detail just two months after filing an EEO complaint and, approximately one month later, was ultimately passed over for the detail"). Evidence that a supervisor was repeatedly hostile toward an employee, beginning shortly after the supervisor learned of the employee's protected activity, is bound to be more probative than evidence of general hostility without any such temporal proximity.[5]

---

[5] This court has also suggested that a pattern of negative, on-the-job treatment could add up to a materially adverse employment action, even if any one of the employer's complained-of acts would not alone count as materially adverse. *See Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (applying Title VII framework to Rehabilitation Act claim and noting that two employment actions, "perhaps alone but certainly in combination—suffice" to satisfy the statutory requirement that employment action be materially adverse); *cf. Taylor v. Solis*, 571 F.3d 1313, 1332 (D.C. Cir. 2009) (Rogers, J., dissenting) ("[R]etaliation can involve a thousand cuts . . . . Where one of those cuts was a materially adverse action, it blinks reality to suggest the other 999 shed no light on whether that cut was intentional and retaliatory." (internal citation and quotation marks omitted)). That aggregation principle makes no difference here, however, because we have assumed for purposes of this appeal that each of the challenged actions upon which Allen relies was materially adverse. We thus need not decide whether considering all her allegations together pushes the other activity Allen describes over the line to count as materially adverse employer conduct such as might have dissuaded a reasonable employee from making or supporting an equal employment claim. Our decision does not turn on any shortfall in

We have also held, however, that the fact that employer adverse action follows closely after an employee's protected assertion of rights is not, by itself, always enough to survive summary judgment. Title VII does not prohibit antagonism in the workplace. Once an employer has put forth legitimate, non-retaliatory reasons for a challenged action, "'positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine.'" *Hamilton*, 666 F.3d at 1359 (quoting *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007)); *see also Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992). In *Woodruff*, we explained in an analogous context that, "[i]f temporal proximity sufficed to rebut a legitimate proffer, then protected activities would effectively grant employees a period of immunity, during which no act, however egregious, would support summary judgment for the employer in a subsequent retaliation claim." 482 F.3d at 530.

Here, Allen disagrees with Hill's reasons for her performance review and non-inclusion in various meetings. Those adverse actions occurred nine months after the settlement of Allen's earlier claims. As discussed above, Allen's rebuttal efforts have not succeeded in raising material factual disputes over the Department's proffered legitimate, non-retaliatory reasons. Adding to the mix consideration of Hill's assertedly compliant but hostile implementation of the settlement agreement several months before the challenged adverse acts does not tip the balance in favor of making it plausible that the real reason Hill acted as she did was to get back at Allen for having sued. Nor does adding the other

---

Allen's showing of adverse action; what we have concluded is wanting is evidence of retaliatory motive.

incidents of antagonism to which Allen points as evidence of retaliatory motive, such as Hill's failure timely to submit a recommendation for Allen for a professional opportunity, support an inference of retaliation. *See* Allen Br. 7, 33.

In sum, even assuming that a jury were to credit Allen's contentions that Hill implemented the settlement agreement and took other actions in a hostile manner, we do not believe that a reasonable jury could conclude that any adverse action of which Allen complains in this case—the performance ratings and non-inclusion in meetings—was taken in retaliation. As we have discussed, we have reviewed the record evidence and have concluded that Allen has not carried her burden to raise an inference that a reasonable jury could credit that Hill's proffered reasons for her evaluation of Allen's work in 2008 and her decisions about meeting attendance were false, and that the real reason was to retaliate against Allen for her earlier, protected activity.

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

So ordered.