# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 11, 2017　　　　Decided August 14, 2018

No. 17-7062

KATHLEEN RANOWSKY,
APPELLANT

v.

NATIONAL RAILROAD PASSENGER CORPORATION, AGENT OF
AMTRAK, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-01133)

*Carla D. Brown* argued the cause and filed the briefs for appellant.

*Matthew J. Sharbaugh* argued the cause for appellees. With him on the brief were *William J. Delany* and *P. David Larson*.

Before: GARLAND, *Chief Judge*, PILLARD, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

2

PILLARD, *Circuit Judge*: In the midst of an extensive restructuring at the Office of the Inspector General for Amtrak, Kathleen Ranowsky was fired from her job as Deputy Counsel. The new Inspector General, Tom Howard, ramped up the restructuring project soon after his appointment; he made changes to several of the Office's departments and dismissed many of its incumbent employees. Ranowsky—a woman in her early sixties who had been a lawyer for the Inspector General for roughly twelve years—was among those Howard fired during the restructuring. Howard also fired Ranowsky's immediate supervisor, the only other employee in the General Counsel's office, the same day. Howard needed no reason to fire Ranowsky, who was an at-will employee, but stated that his lack of confidence in her was the reason for her termination.

Ranowsky claims that her termination was the product of discrimination based on her age and sex, in violation of the District of Columbia Human Rights Act (DCHRA), D.C. Code § 2-1401 *et seq*. She also claims that Amtrak later retaliated against her for filing her EEO complaint, and that two of its employees aided and abetted those violations. The district court denied Ranowsky's motion *in limine*, which sought wholesale evidentiary preclusion as a discovery sanction, then granted summary judgment for the defendants. Because Ranowsky has not pointed to record evidence from which a reasonable jury could infer either age or sex discrimination, and the sanction she sought was unwarranted, we affirm.

I.

A.

The Office of the Inspector General for Amtrak (OIG or Office) is an autonomous entity within Amtrak created in 1989 with the mission of providing "independent, objective oversight of Amtrak's programs and operations." *Vision,*

*Mission, and Authority*, Amtrak Office of Inspector General, https://www.amtrakoig.gov/about-us (last visited July 31, 2018); Joint App'x (J.A.) 415. An Inspector General heads the Office, aided by a Deputy. The Office has historically been organized into five departments: Audit, Investigation, Evaluations, Administrative Services, and General Counsel. The Office of General Counsel is the smallest of those departments, staffed when Ranowsky worked there only by herself, as Deputy Counsel, and General Counsel, Colin Carriere, to whom she directly reported. The Office of General Counsel is the OIG's lawyer, and the OIG is its only client.[1]

When a newly-appointed Amtrak Inspector General took charge in 2009, he began a "transformation effort" to change OIG's structure and improve its functionality. That Inspector General hired Tom Howard as his deputy in 2010. Together, Howard testified, they "began an effort to correct problems that [they] saw in the office." J.A. 332. Howard himself was appointed Inspector General in February 2014, after his predecessor's retirement. Howard continued the transformation effort by implementing major structural changes, including the widespread dismissal of employees throughout the Office. "Of the approximately 95 people in place in 2010, less than 30 of them remain[ed] in the OIG" as of 2015. J.A. 416.

## B.

Appellant Kathleen Ranowsky is one of the dozens of employees dismissed from Amtrak OIG during its

---

[1] This case is on review from the grant of a motion for summary judgment, so we recount only those facts that are not genuinely disputed; insofar as the record contains conflicting evidence, we resolve disputes and draw inferences in plaintiff's favor, as a reasonable jury would be entitled to.

restructuring. Ranowsky, who had held her position as Amtrak OIG Deputy Counsel since 2002, was fired from that job in November 2014. In the process of restructuring Amtrak OIG, Howard came to believe "many" of the problems he had identified across the Office "were the result of inaction or inappropriate action on the part of the counsel." J.A. 332. Howard testified that, as soon as he was appointed in February 2014, he began to consider replacing General Counsel Colin Carriere, because Howard "wasn't satisfied with the service that the counsel had been providing." J.A. 331. Around September or October 2014, Howard added, he "began to think about what the ramifications would be of keeping the deputy counsel" if he fired the head counsel, questioning "how effectively [Deputy Counsel Ranowsky] would work with a new [head] counsel." J.A. 334.

Howard had formed some reservations about Ranowsky's work—particularly her communication style and demeanor—during their shared time at Amtrak OIG. He testified that, in his view, Ranowsky was not responsive to his needs as client. Rather than provide direct answers to his requests for legal advice, Ranowsky would indirectly push back. He recalled, for instance, that Ranowsky "kept raising obstacles" to what Howard "wanted to accomplish"—in one particular case, resisting his efforts to create an appropriately redacted copy of an investigative document a congressional committee had requested without ever "actually tell[ing] [him] that she thought it shouldn't happen." J.A. 357. Howard testified that he found Ranowsky's communication style during the exchange "condescending, belittling, [and] very flippant," pointing in particular to a statement she made via email "'to the effect, any fool could see' the answer to his question." J.A. 267.

In deciding whether to retain Ranowsky as the OIG's counsel, Howard also sought input from the Assistant Inspectors General who relied on Ranowsky for legal counsel. The Assistant Inspector General for Audits testified: "I told [Howard] that I didn't think the quality of [legal] support was as good as I had experienced in my previous role as an AIG for audit." J.A. 375. In particular, he recounted that when he and Ranowsky were working on a memo together, she circulated the memo without incorporating his final comments; when the AIG asked Ranowsky why she had done so, she responded via email that "next time you've got to get your comments in quicker." J.A. 377. He testified that Ranowsky's "approach was generally to ask questions as opposed to provide solutions or give definitive information." J.A. 380. The AIG for Investigations similarly testified that Ranowsky was "[a]lways apprehensive about providing support in furtherance of what you wanted to do," and instead was more likely to "give you the negative outcomes of anything you asked her." J.A. 385.

In October 2014, at around the same time that Howard was reviewing Ranowsky's performance with the Assistant Inspectors General, he "signed off" without comment on a positive review that General Counsel Carriere had conducted of Ranowsky's job performance. J.A. 957-58, 961. Carriere awarded Ranowsky an overall rating of "exceeded goals," and concurred with Ranowsky's self-assessment that she was producing helpful work product and communicating effectively. J.A. 648-50. Ranowsky had earned a positive performance review the previous year as well, when based on his own observations and experience working with Ranowsky, Carriere rated her overall as having "exceeded goals and modeled Amtrak OIG values." J.A. 654. Carriere conducted it, but Howard approved that review too, signing it before Ranowsky received it.

Howard fired Ranowsky just a few weeks after she received her 2014 positive evaluation, on the same day that he fired General Counsel Carriere. Howard cited "lost confidence" in Ranowsky's performance as the reason for her termination. *See* J.A. 398, 415.

It is undisputed that Howard alone made the decision to fire Ranowsky. He did, however, "discuss the processes . . . to carry out" her termination with Terry Gilmore, the head of human resources for Amtrak's OIG. While completing the accompanying paperwork, Gilmore listed Ranowsky's departure as the result of a "reduction in force." Howard did not tell Gilmore to designate the firing a reduction in force. *See* J.A. 633, 836. Gilmore said he did so in order to offer Ranowsky a severance package. *See* J.A. 451, 453.

Shortly after her dismissal, Ranowsky filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that her termination was discriminatory on the bases of age and sex. Meanwhile, Howard temporarily detailed Nadine Jbaili, a recent law school graduate then in her twenties who was working in the OIG's Audit department, to the General Counsel's office. While working there on a short-term basis, Jbaili picked up much of Ranowsky's work.

Howard in February 2015 hired Kevin Winters, a man in his sixties, to head the General Counsel's office. Winters then took the lead in staffing his office. After observing Jbaili's work, Winters decided to hire her permanently for a new junior Associate Counsel position.

Winters then turned to filling the Deputy Counsel position that Ranowsky had held; he alone selected which applicants to interview. The listed "minimum qualifications" for the position included "10 years of legal work experience," while "[c]reativity, flexibility, and ability to work in a fast paced

environment" were listed as "[p]referred" qualifications. J.A. 1029. Ranowsky applied for the position, but Winters decided not to interview her because Howard had recently dismissed Ranowsky from the same position. A committee consisting of Winters, Gilmore, and three other OIG executives—Howard not among them—determined which of the interviewed candidates would receive an offer.

Amtrak initially offered the position to René Lee, a woman with sixteen years of experience as a practicing lawyer. Ranowsky asserts, and Amtrak does not dispute, that Lee was close in age to Ranowsky. Amtrak first proposed to pay Lee an annual salary of $155,000, then increased its offer to $165,000. Lee declined the job, both because neither salary sufficed and because the manner in which Winters and Gilmore communicated with her caused her to doubt the sincerity of Amtrak's interest. Lee stated that she suspected Amtrak did not genuinely want to hire her but had actually "pre-selected a less-qualified candidate" because, after she expressed dissatisfaction with the salary Amtrak offered, Gilmore "requested multiple times that she withdraw her application in writing." J.A. 636-37. Amtrak then hired Frank Mazurek, a 35-year-old man who had worked with Winters as a lawyer in the National Aeronautics and Space Administration (NASA)'s OIG. Mazurek had started at NASA part time in May 2005, while he was still in law school, become staff attorney there in 2006 after passing the bar, and stayed on until he left for Amtrak's OIG in 2015.

Ranowsky also applied a few months later for a temporary contract attorney position in Philadelphia at Amtrak's corporate office, not part of the OIG. The person in charge of hiring for that post, William Herrmann, stated in his declaration that he did not interview her because, "based on [his] prior dealings with Ms. Ranowsky," he did not believe she "would

be a positive addition or contribution to the work of the Amtrak Law Department." J.A. 497-98.

## C.

Ranowsky in July 2015 sued Amtrak, and Howard and Gilmore personally, in District of Columbia Superior Court, alleging violations of the District of Columbia Human Rights Act. Based on its status as a congressionally incorporated entity, Amtrak removed the case to federal court. *See* 28 U.S.C. § 1349; *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 365 F.3d 1104, 1105 (D.C. Cir. 2004). Ranowsky's amended federal complaint alleged principally that her termination was motivated by age and sex discrimination in violation of the DCHRA. She also alleged that Amtrak's two refusals to reemploy her were discriminatory on those same grounds, and also in retaliation for her EEOC charge. She named Howard and Gilmore as individual defendants personally liable under D.C. Code § 2-1402.62 for carrying out Amtrak's illegal actions.

The case proceeded to discovery. After Ranowsky deposed Howard, Gilmore, and other key Amtrak executives, a dispute arose over whether and under what circumstances Amtrak and its OIG would produce a corporate designee for deposition under Federal Rule of Civil Procedure 30(b)(6). Ranowsky notified Amtrak that she wanted to depose a corporate designee on a wide range of subjects. Amtrak responded within three days, asserting that several of the proposed topic areas were "overbroad, vague, and not described with sufficient specificity." J.A. 170. Amtrak objected that many of the topics proposed in the deposition notice "would simply be duplicative of other discovery efforts in the case, including prior depositions," J.A. 171, and recounted information it had already provided on the issues

Ranowsky sought to pursue. For example Ranowsky's Rule 30(b)(6) deposition notice sought testimony on "[a]ll information respecting Ms. Ranowsky's separation from Amtrak, including the reasons therefore . . . and the ultimate decision maker"; Amtrak responded that Howard, the undisputed sole decision maker behind Ranowsky's termination, had already testified to the reasons for his decision "as well as the other points requested in these topics." J.A. 171. Similarly, Ranowsky had requested "[a]ll information respecting any severance or severance packages presented to Ms. Ranowsky," but Amtrak had already produced a copy of the severance agreement and both Howard and Gilmore had been deposed on that and other matters related to the formal terms of Ranowsky's separation. J.A. 171-72.

Amtrak offered to work with Ranowsky on "targeted follow-up," J.A. 172, but Ranowsky did not respond until several weeks later, when her counsel noticed Amtrak's 30(b)(6) deposition on all the initially identified topics, unaltered, for the last day of the discovery period. Amtrak failed to appear. Without seeking to compel Amtrak's participation or an extension of the discovery period, Ranowsky moved *in limine* to sanction Amtrak for failure to appear, seeking an order precluding Amtrak from raising any defenses that information she hoped to obtain through the Rule 30(b)(6) deposition might have rebutted. Amtrak opposed, maintaining its objections that the noticed topics were overly broad and duplicative. The district court summarily denied Ranowsky's sanctions motion by minute order.

At the close of discovery, the district court granted summary judgment in defendants' favor on all of Ranowsky's claims. *Ranowsky v. Nat'l R.R. Passenger Corp.*, 244 F. Supp. 3d 138 (D.D.C. 2017). Ranowsky appeals both the grant of summary judgment and the denial of sanctions.

10

II.

We review *de novo* the district court's summary judgment. *See Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015). Amtrak is entitled to summary judgment only upon showing "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "At summary judgment, the court must avoid weighing the evidence and making credibility determinations. We instead assume all conflicts would be resolved and all inferences drawn in the nonmoving party's favor and inquire whether, on the evidence so viewed, 'a reasonable jury could return a verdict for the nonmoving party.'" *Allen*, 795 F.3d at 38 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

We review first Ranowsky's claim that she was fired on the discriminatory basis of her age and/or sex; we focus on her age discrimination claim because Ranowsky marshals no evidence in support of her sex discrimination claim that she does not also use in support of her age discrimination claim. We turn then to her additional DCHRA claims.

A.

The DCHRA forbids an employer from firing an employee "wholly or partially for a discriminatory reason based upon . . . sex [or] age." D.C. Code § 2-1402.11(a); *see Wash. Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1072-73 (D.C. 2008). "We analyze discrimination claims under the [DCHRA] in the same way that we analyze discrimination claims under" Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*. *See Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1246 (D.C. Cir. 2011). Because it is undisputed here that Ranowsky has "suffered an adverse employment action and [Amtrak OIG] has asserted a

legitimate, non-discriminatory reason for the decision," the dispute focuses on "one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [age or sex]?" *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

Howard was the sole decision maker on Ranowsky's termination, and his asserted explanation is at issue. Ranowsky cannot avoid summary judgment merely by asserting that she disbelieves Howard's claimed "loss of confidence"; she must instead present evidence from which a reasonable jury could conclude that Howard's stated reason was "dishonest or unreasonable." *Brady*, 520 F.3d at 496; *see George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005). "Whether the available evidence suffices to support a jury finding" in Ranowsky's favor "will, necessarily, be a contextual judgment." *Allen*, 795 F.3d at 40.

A "key component" of discrimination claims where, as here, the employer has put forth a nondiscriminatory reason is "the battle over pretext." *Id.* at 39. Amtrak maintains that "loss of confidence" in Ranowsky's ability to perform her job was the sole basis for her termination. Ranowsky counters that its explanation is pretextual, and that discrimination was the actual reason, on four grounds:

*First*, Ranowsky asserts a jury could disbelieve Howard's nondiscriminatory justification for her firing because Amtrak offered "shifting explanations" for that decision. While "it is often reasonable to think that an employer who . . . shifts its rationale for challenged action is culpable of the charged discrimination," *id.* at 40, the record in this case does not

support a claim of shifting explanations. Howard's explanation has remained entirely consistent:

- The letter Ranowsky received when she was terminated on November 18, 2014, attributed the dismissal to Howard's "loss of confidence" in her. J.A. 657.
- Amtrak maintained that same stance in its April 9, 2015, position statement to the EEOC, filed in response to Ranowsky's charge of discrimination. J.A. 414-20. It added that, in reviewing and restructuring the entire OIG, Howard came to believe the General Counsel's office was "not providing adequate support to the OIG," J.A. 416, and Ranowsky in particular was "not always helpful and was sometimes belligerent and disrespectful," J.A. 417. The Assistant Inspectors General for Audits and Investigations doubted, as did Howard, that she would work effectively with a new supervisor. J.A. 417.
- After litigation began, Howard again asserted in his response to Ranowsky's interrogatories that he had lost confidence in "the quality of legal assistance provided by [Ranowsky] to her primary clients – the Audit and Investigations groups within OIG" and in her ability to work well with those employees. J.A. 398.
- Amtrak maintained that position in its motion for summary judgment, J.A. 242, and continues to maintain it on appeal, Appellees' Br. 32-33.

Ranowsky points to no evidence from which a reasonable jury could conclude that Howard, the undisputed decision maker, ever shifted his explanation, nor do we on our review of the record see any. Ranowsky's "shifting explanations" theory rests solely on the fact that the head of human resources for Amtrak OIG, Terry Gilmore, coded Ranowsky's termination as a "reduction in force" on the human resources

paperwork accompanying the termination. But it is undisputed that Gilmore explained that he did so to show Ranowsky's eligibility for severance pay. Gilmore's coding decision—made without any input from Howard—does not expose any shift in Howard's explanation from which a jury could infer that his "loss of confidence" rationale was a pretext for discrimination.[2]

*Second*, Ranowsky contends that Howard could not have genuinely lost confidence in her because he signed off on Carriere's positive performance review of her work only a few weeks before he fired her. J.A. 957. But Howard's signoff on Carriere's evaluation does not establish that Howard, contrary to his proffered nondiscriminatory reason, was confident in Ranowsky's ability to serve as Deputy Counsel for him and a new General Counsel going forward. While the disparity between a positive performance review and performance-based termination would in some cases suffice to raise a material factual dispute regarding pretext, *see George*, 407 F.3d at 413-14, discerning pretext is highly contextual, *see Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1290-94 (D.C. Cir. 1998) (en banc);

---

[2] "Workforce reduction explains why [a defendant employer] laid off a group of its workers, but it does not explain why [the plaintiff employee] was chosen to be part of that group." *Diaz v. Eagle Produce Ltd.*, 521 F.3d 1201, 1212 (9th Cir. 2008). Dismissal on the ground of reduction in force, or "RIF," is not necessarily inconsistent with dismissal for lack of confidence, and the two could go hand in hand: A decision maker's relative degrees of confidence in various employees may be the selection criterion for carrying out a reduction in force. In *Diaz*, for example, the employer, Eagle Produce, provided "legitimate, non-discriminatory explanations for the layoffs of Moreno and Mancilla." *Id.* at 1212. Its interlocking justifications were "an overall workforce reduction and performance deficiencies. Those explanations were each different, but not inconsistent." *Id.* at 1214.

*Allen*, 795 F.3d at 40. The undisputed evidence in the context before us fails to raise an inference of pretext: General Counsel Carriere's positive performance reviews of Ranowsky as his Deputy—even as approved by Howard—do not conflict with Howard's own assessment that he did not feel confident continuing to rely on Ranowsky for sensitive and consequential legal advice.

It is undisputed that, in his role as Inspector General, Howard is both the supervisor of the employees in the General Counsel's office and also their client. As the OIG's principal in charge of at-will employees, Howard was entitled to fire Ranowsky with or without warning for any lawful reason, or for no reason at all. *See McCormick v. District of Columbia*, 752 F.3d 980, 987 (D.C. Cir. 2014). In carrying out the restructuring of Amtrak OIG, Howard dismissed dozens of employees across the Office. On the day he fired Ranowsky, Howard also fired Carriere, the General Counsel. Inspector General Howard and his Office are, as clients, entitled to select lawyers in whom they feel they can place their trust and confidence. The confidential, at-will character of the Counsel and Deputy Counsel jobs underwrites that trust. That does not mean that employees like Ranowsky may be fired for discriminatory or retaliatory reasons; they cannot. *See generally Price Waterhouse v. Hopkins*, 490 U.S. 228, 255-58 (1989) (plurality opinion). But it does show why Carriere's evident appreciation of Ranowsky's skill does not conflict with Howard's expressed lack of confidence as client in her working style, demeanor, or dedication to his objectives.

It was the Inspector General's prerogative to choose a General Counsel and Deputy Counsel with whom he felt he and his team could communicate clearly and efficiently, and in whom they could repose their trust and confidence. Ranowsky's "primary clients" at the Office of Inspector

General, J.A. 344, with Howard at the head, all testified they had reservations about whether Ranowsky was the best person to serve the OIG. They unanimously expressed concern that Ranowsky was more likely to resist their objectives than to aid them in navigating legal requirements to achieve those objectives. No documentary evidence was inconsistent with that testimony and, indeed, emails from August 2014 provide contemporary corroboration of Howard's own frustrations in working with Ranowsky.

Relying on Carriere's evaluation, Ranowsky mounts a defense of her work. Carriere, after all, praised it and, as far as she knew, her work was "exceed[ing] goals." J.A. 648-49. Ranowsky saw herself as "represent[ing] the interests of the office" rather than any one member, J.A. 704, perhaps explaining her decisions to push back, even as the Assistant Inspectors General considered her a "naysayer," J.A. 385. We need not gainsay that Ranowsky is a capable lawyer, and that her performance appraisals meaningfully so recount, to conclude that nothing in the record contradicts Amtrak's proffered nondiscriminatory rationale for the firing: On his own assessment, Inspector General Howard did not deem Ranowsky to be a counselor on whom he and the Assistant Inspectors General felt inclined to depend. Howard's signoff on Carriere's evaluation of Ranowsky does not conflict with Howard's assertion that he "honestly and reasonably" lacked confidence in Ranowsky and that he credited the Assistant Inspectors General's similar reservations. *See Brady*, 520 F.3d at 496.

*Third*, Ranowsky maintains that the qualification disparity between her and her younger replacements is evidence of age bias that gives reason to doubt the sincerity of Howard's claim of lost confidence. In particular, she contends that she was first temporarily replaced by a much younger and less experienced

woman, Nadine Jbaili, and then permanently replaced by Frank Mazurek, who was also younger and whom Ranowsky claims was underqualified for the position. The job announcement required ten years' legal experience, and Mazurek had been a licensed attorney only for nine of the ten years he had worked in the NASA OIG's office.

Again, however, Ranowsky fails to make a crucial link: Jbaili was not Ranowsky's replacement, but only filled Ranowsky's role until Howard could hire a new General Counsel. It was that new counsel, Kevin Winters, who then decided to retain Jbaili in a junior, Associate Counsel job, and to hire Mazurek as Deputy Counsel. Howard and Winters both testified that Howard wielded no influence over Winters's interviewing and hiring decisions for the Deputy Counsel position. *See* J.A. 364, 366, 472. Ranowsky points to no evidence from which a reasonable juror could conclude that Winters's decision to hire Jbaili and Mazurek reflects any age-based bias or pretext on Howard's part.

*Fourth*, Ranowsky marshals evidence of what she maintains is Amtrak OIG's and Howard's bias more generally against persons over forty. She contends, for example, that Amtrak was engaged in succession planning—that is, taking account of employees' long-term plans, including departures and retirements, to ensure its staffing needs would be met over time. Without more, such routine business planning does not raise an inference of discrimination. Ranowsky also contends that Winters made an illusory job offer for the Deputy Counsel position to a qualified, older woman, René Lee, in what Ranowsky describes as an attempt to cover up Amtrak's discrimination. Lee submitted a declaration stating that she "suspected" based on an "odd feeling" that Amtrak's job offer to her was disingenuous, J.A. 682, but that affidavit offers no factual basis to doubt Amtrak OIG's interest; indeed, Winters

increased Lee's salary offer by $10,000 in hopes of convincing her to take the position. Finally, Ranowsky points to Howard's testimony that he "did not" think Ranowsky "could adapt" to working with a new individual as reflecting an age-based stereotype. To be sure, it is a stereotype that older people are less flexible than their juniors. *See Steele v. Mattis*, No. 16-5236, slip op. at 12-14 (D.C. Cir. Aug. 10, 2018). But Ranowsky has offered no reason to doubt that Howard's expressed reservation about her ability to "adapt" referred, honestly and reasonably, to the experiences he and the Assistant Inspectors General described of finding Ranowsky abrupt and dismissive in ways that made it difficult for them to work with her.

On her principal discrimination claim, we hold that Ranowsky has failed to adduce the evidence to turn her suspicions into a triable inference of discrimination, as a plaintiff must do to defeat a properly supported motion for summary judgment. Accordingly, we affirm the district court's dismissal of that claim.

## B.

Ranowsky brings two additional DCHRA claims, neither of which raises a triable issue.

*First*, shortly after being fired, Ranowsky applied to positions at both Amtrak OIG and the Amtrak Law Department, and she contends that discrimination and/or retaliation for filing her EEOC charge account for her being neither interviewed nor hired for either position. Ranowsky re-applied for her former position as Deputy Counsel once the new General Counsel, Winters, sought to fill it. Winters testified that he declined to interview Ranowsky because the Inspector General had recently fired her from that very job. Ranowsky contends that Howard's stated reason for firing her

was disingenuous and discriminatory and that his bias tainted Winters's decision, but that ground falls with our holding that the record cannot support a finding that Howard's decision was motivated by discrimination. There is accordingly no genuine factual dispute for a jury. Summary judgment is appropriate here because Ranowsky has failed to put forward any evidence showing that Winters declined to interview or hire her because of her age or sex, or in retaliation for her decision to file an EEOC complaint. *See Vatel*, 627 F.3d at 1247-48.

Similarly, Ranowsky has not created a genuine dispute of fact material to the honesty or reasonableness of Amtrak Managing Deputy Counsel William Herrmann's decision to pass over Ranowsky's application for a contract attorney position in the Amtrak Law Department's Philadelphia office. Herrmann, who was hiring for Amtrak rather than its OIG, maintains he decided not to interview Ranowsky because he had an unfavorable impression of her after working with her in the past. Ranowsky points to nothing in the record that supports an inference that discrimination or retaliation was a factor in Herrmann's assessment. Accordingly, we affirm the district court's decision to grant summary judgment on this claim as well.

*Second*, we affirm the district court's grant of summary judgment for Amtrak on Ranowsky's "aiding and abetting" claims against Howard and Gilmore individually. Because Amtrak did not violate the DCHRA in firing or failing to hire Ranowsky, there was no statutory violation for Howard or Gilmore to aid or abet. *See Guajacq v. EDF, Inc.*, 601 F.3d 565, 576, 578 (D.C. Cir. 2010).

\* \* \*

In affirming summary judgment, we decide only that Ranowsky has not pointed to evidence that contradicts

Amtrak's evidence of the relevant decision makers' honest loss of confidence in her. *See Brady*, 520 F.3d at 496; *George*, 407 F.3d at 415. In affirming dismissal of the discrimination claims, we do not more broadly review Howard's decision to fire Ranowsky or his judgment that he could not work well with her. Those are business decisions for him to make—wisely or not. *See Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006); *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).

## III.

Ranowsky also appeals the district court's summary denial of her motion *in limine* for sanctions based on Amtrak's failure to produce a corporate representative for deposition under Federal Rule of Civil Procedure 30(b)(6). We review that order for abuse of discretion, and "may reverse the trial court only if . . . its actions were clearly unreasonable, arbitrary or fanciful." *See Bonds v. District of Columbia*, 93 F.3d 801, 807-08 (D.C. Cir. 1996) (alteration in original) (quoting *Hull v. Eaton*, 825 F.2d 448, 452 (D.C. Cir. 1987) (per curiam)).

The sanctions Ranowsky sought were broad: She moved to "preclud[e] Defendants from raising at summary judgment or trial any affirmative defense, fact, or explanation that . . . relate[s] to any of the corporate designee topics." *Ranowsky v. Nat'l R.R. Passenger Corp.*, No. 15-1133, Dkt. No. 28 at 1. Those corporate-designee topics, in turn, included expansive requests, such as for "[a]ll information respecting Ms. Ranowsky's separation from Amtrak OIG, including the reasons therefore [sic]," J.A. 150, and "[a]ll other facts or information Amtrak OIG contends are relevant in this lawsuit or to Ms. Ranowsky's claims," J.A. 152. Howard had already testified to the reasons for Ranowsky's separation from Amtrak, and Amtrak had already produced documents and

deponents responsive to the subject matter of Ranowsky's new requests. *See* J.A. 171-72; *see also* J.A. 195-99. Were the district court to have granted Ranowsky's motion, Amtrak would have effectively been precluded from engaging any of the facts pertinent to the case.

The district court did not abuse its discretion in refusing to impose the requested sanction. While discovery was ongoing, Amtrak responded to Ranowsky's counsel within three days of receiving the deposition topics, contending they were overbroad and in many cases duplicative: Amtrak expressed its willingness to "respond[] to targeted follow-up" on any "particular aspect of one of these topic areas" Ranowsky believed was "not covered." J.A. 172. The record does not reflect any such targeted follow up on Ranowsky's part. Instead, Ranowsky's counsel did not respond for several weeks, at which point she emailed Amtrak a week before discovery's end to ask about deposition dates, and served notices for the final day of the discovery period without waiting even half an hour for a response. J.A. 175-76. When Amtrak then failed to produce a Rule 30(b)(6) deponent, Ranowsky's counsel did not move the magistrate judge overseeing discovery to compel Amtrak's participation.

Rule 37 does not excuse a party from appearing for a properly-noticed 30(b)(6) deposition because it objects to it, *see* Fed. R. Civ. P. 37(d)(2), but it also does not require the district court to impose sanctions—let alone a preclusion order effectively dispositive of the merits, *see* Fed. R. Civ. P. 37(d)(1)(A). "The choice of sanction should be guided by the 'concept of proportionality' between offense and sanction." *Bonds*, 93 F.3d at 808. The sole sanction Ranowsky sought was to preclude Amtrak from raising any fact or defense relevant to Ranowsky's termination. In view of Ranowsky's failure to identify any shortfall in information already obtained

by other discovery mechanisms, and lack of meaningful specificity as to the further information she sought, the district court acted within its reasonable discretion in denying a requested sanction that would have amounted to a judgment in Ranowsky's favor.

* * *

We accordingly affirm the district court's grant of summary judgment on all of Ranowsky's claims and its denial of her motion *in limine* for discovery sanctions.

*So ordered.*