# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――

Argued January 18, 2011                    Decided June 17, 2011

No. 10-5047

DENISE R. COLBERT, AN INDIVIDUAL,
APPELLANT

v.

ROBERT C. TAPELLA, PUBLIC PRINTER, U.S. GOVERNMENT
PRINTING OFFICE,
APPELLEE

―――

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-01219)

―――

*Theodore S. Allison* argued the cause and filed the briefs for appellant.

*Wyneva Johnson*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Alan Burch*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, GARLAND and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

Concurring opinion filed by *Circuit Judge* HENDERSON.

BROWN, *Circuit Judge*: Denise R. Colbert ("Colbert"), a black woman, worked at the Government Printing Office ("GPO") for over thirty years. In December, 2005, she applied for two job openings in the Congressional Publishing Services, an office within the Customer Service Division of the GPO. Without interviewing any candidates, the GPO filled the two positions with white men. Colbert sued the GPO under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., alleging race and gender discrimination. The district court granted the GPO's motion for summary judgment. Because a reasonable jury could find in Colbert's favor, we reverse and remand.

I

In December, 2005, the GPO posted two vacancy announcements for a Supervisory Printing Services Specialist. The two jobs differed in their work schedule (day versus night shift) and available salary range (PG 14 pay level versus PG 13/14 pay level). Each job posting contained a section entitled "How You Will Be Evaluated," which stated: "If you meet the qualifications described above, you will be further evaluated based on your narrative responses to each knowledge, skill, ability and other characteristic ("KSAO") listed below." Beneath this summary, the job posting described the five KSAOs required for the position: (1) ability to supervise and direct the work of others, (2) knowledge and understanding of the laws and regulations governing the

actions of the Government Printing Office, (3) knowledge of the legislative process, especially the stages through which a bill passes to become law, (4) ability to communicate effectively orally, including skill in responding directly to inquiries from Senators, Congressmen, and congressional staff members, and (5) knowledge of terminology, and mechanics of the electronic transmission of data presently used by GPO and Congress.

Jerry Hammond, Director of the Congressional Publishing Services, assisted by Lyle Green, the Associate Director, selected among the applicants for the two available printing specialist positions. Hammond did not interview the candidates. Instead, he evaluated each on their written application, including the candidate's stated qualifications and narrative responses, as well as any personal knowledge Hammond possessed of a candidate's work. Ultimately, Hammond selected Joseph Benjamin and William Milans, both white males, for the two positions.

Colbert sued the GPO, alleging race and gender discrimination under Title VII. After discovery, the GPO moved for summary judgment, and the district court granted the GPO's motion. *Colbert v. Tapella*, 677 F. Supp. 2d 289, 295 (D.D.C. 2010).

## II

Title VII protects employees from personnel actions that discriminate on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Where an employer asserts a non-discriminatory reason for the decision in question, the court's inquiry is limited to "one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-

discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). In considering this question, the court may look at "(1) the [employee's] *prima facie* case; (2) any evidence the [employee] presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the [employee] . . . or any contrary evidence that may be available to the employer." *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, we view the evidence in the light most favorable to Colbert, and draw all reasonable inferences in her favor, but we do not make credibility determinations, nor do we weigh the evidence. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

## A[1]

The district court erred by requiring Colbert to show not only that the GPO's nondiscriminatory reason was pretext, but also that discrimination was the actual reason Colbert was not promoted. *Colbert*, 677 F. Supp. 2d at 295. In so doing,

---

[1] We do not perceive a material difference between this opinion's description of the legal standard under Title VII and that described by our concurring colleague.

the district court relied on *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). But we rejected this interpretation of *Hicks* in *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc). There, we stated that "we do not endorse a reading of *Hicks* under which employment discrimination plaintiffs are presumptively required to submit evidence over and above [evidence of pretext] in order to avoid summary judgment." *Id.* at 1292. And we further noted "[t]he jury can conclude that an employer who fabricates a false explanation has something to hide; that 'something' may well be discriminatory intent." 156 F.3d at 1293.

Earlier this term, we affirmed a grant of summary judgment in favor of an employer when the only evidence the employer fabricated a false explanation was the employee's own personal opinion. *See Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011). This case is the natural corollary: the employer admits to having lied about Colbert's nonselection. In his first meeting with an EEO investigator, Hammond said he did not select Colbert, in part, because she "wandered." When later asked whether he actually believed Colbert wandered, Hammond said "not really." The GPO argues Hammond's statement that Colbert "wandered" is not a lie because Hammond said it "out of anger more than anything else." Oral Argument Tr. 20–21. But this argument is nothing more than a lawyerly effort to downplay problematic evidence. Hammond admits part of his stated rationale for passing over Colbert was not true. It is thus a lie, carrying with it "considerable evidentiary significance," *Aka*, 156 F.3d at 1292, regardless of Hammond's stated motivation.

6

B

A "plaintiff cannot always avoid summary judgment by showing the employer's explanation to be false . . . ." *Id.* "For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). This case does not fit either exception.

The record does not "conclusively reveal[] some other, nondiscriminatory reason" for Hammond's decision to pass over Colbert. *Id.*; *see Aka*, 156 F.3d at 1291 (discussing *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328 (8th Cir. 1996)). Instead, the record suggests the opposite: GPO's proffered non-discriminatory reason appears to be unfounded. According to Hammond, Colbert was not better qualified than Benjamin or Milans because her prior work experience was "perfunctory" and "limited to routine tasks." He also said Colbert "never worked in procurement," did not "expand her technological capabilities," and lacked "supervisory experience." *Id.* But nothing in the record supports these statements. Colbert worked for the GPO for over 30 years. During that time she received numerous awards and commendations, including eight outstanding performance awards. In addition, Colbert cites extensive knowledge of printing procurement regulations based on work in the Customer Service Division and as a liaison between customer agencies and the procurement section. Colbert also took two courses in "procurement," an 80-hour college course in offset printing, seven courses on electronic publishing, and eleven

computer courses related to her work at GPO (including two courses in procurement)—all of this, in addition to her formal work training and over ten years supervisory experience at GPO.

The record also does not provide "abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148. "Where an employer has a strong record of equal opportunity employment, any inference of discrimination arising from the discrediting of the employer's explanation may be a weak one, and in some cases not strong enough to let a reasonable factfinder conclude that discrimination has occurred at all." *Aka*, 156 F.3d at 1291. As an example, in *Aka*, we described "a situation in which the hiring officer, as well as 40% of the employer's work force, were members of the same minority group as the plaintiff even though the group in question comprised only 10% of the relevant labor market." *Id.* By comparison, the GPO admits that since 1994 white employees have exclusively filled the Print Officer and Printing Services Specialist positions, save one. And that single minority employee received her position through the settlement of her own race discrimination complaint.

The district court, relying on *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008), found "[n]othing Ms. Colbert offers . . . sufficient to show that she was 'significantly better qualified' than Mr. Benjamin or Mr. Milans." *Colbert*, 677 F. Supp. 2d 289, 294 (D.D.C. 2010). *Adeyemi* held, "when an employer says it made a hiring or promotion decision based on the relative qualifications of the candidates, a plaintiff can directly challenge that qualifications-based explanation only if the plaintiff was 'significantly better qualified for the job' than those ultimately chosen. . . . The qualifications gap must be great

enough to be inherently indicative of discrimination." 525 F.3d at 1227. But *Adeyemi* is not controlling here because Colbert is not using her comparative qualifications to prove discrimination. Rather, Colbert uses her qualifications to show this is not the exceptional case in which the record "conclusively revealed some other, nondiscriminatory reason." *Reeves*, 530 U.S. at 148.

## III

Summary judgment is inappropriate if Colbert can produce sufficient evidence that the GPO's non-discriminatory reason for passing her over—that other candidates were more qualified—is pretext for discrimination. The district court held Colbert did not do so. But the district court erred by requiring Colbert to show not only that the GPO's nondiscriminatory reason was pretext, but also that discrimination was the actual reason Colbert was passed over. We do not suggest merely showing the employer's explanation to be false would be sufficient. However, given Hammond's lie, his apparent lack of knowledge about Colbert's actual experience or training, and other evidence that the hiring and promotion practices of CPS were generally inhospitable to minorities, additional evidence of discrimination was not necessary for Colbert to defeat summary judgment. *Aka*, 156 F.3d at 1292.

*So ordered.*

KAREN LECRAFT HENDERSON, *Circuit Judge*, concurring:

Although I concur, I write separately because I do not agree with my colleagues' articulation of the nature of the plaintiff's burden at the summary judgment stage of a Title VII discrimination claim. We all rely on the following language of *Brady*:

> [I]n considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason *and* that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?

*Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510, 511 (1993); *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)) (emphasis added). My colleagues, however, fault the district court for "requiring Colbert to not only proffer evidence that the GPO's nondiscriminatory reason was pretext, but also additional evidence that discrimination was the actual reason Colbert was not promoted." Maj. op. at 4 (citing *Colbert v. Tapella*, 677 F. Supp. 2d 289, 295 (D.D.C. 2010).[1] As *Brady* makes clear, providing a false reason for the

---

[*]Echoing Supreme Court precedent and our own, the district court in fact stated: "[A] plaintiff must *show* '*both* that the reason was false, *and* that discrimination was the real reason.' " Colbert, 677 F. Supp. 2d at 295 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. at 515) (first emphasis added). The difference in language between the majority's and the district court's phrasing, however, is insignificant as the usual means to show something for the purpose of summary judgment is to "proffer evidence" of it. *See Hendricks v. Geithner*, 568 F.3d 1008, 1013 (D.C. Cir. 2009) ("To prove her discrimination claim, [the plaintiff] would . . . have to offer evidence supporting an

employment decision is not conclusive of pretext or of discrimination. In the end, the employee bears the burden of showing not that the employer is dishonest but that it engaged in unlawful discrimination against the employee. *See Hicks*, 509 U.S. at 511 ("Court of Appeals' holding that rejection of the defendant's proffered reasons compels judgment for the plaintiff disregards the fundamental principle of [Fed. R. Evid.] 301 that a presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears the ultimate burden of persuasion." (quotation omitted)). Thus, " 'there will be instances where . . . the plaintiff has . . . set forth sufficient evidence to reject the defendant's explanation, [yet] no rational factfinder could conclude that the action was discriminatory.' " *Desmond v. Mukasey*, 530 F.3d 944, 963 (D.C. Cir. 2008) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (alterations in *Mukasey*)). This principle is illustrated by our decision in *Hendricks v. Geithner*, 568 F.3d 1008, 1013 (D.C. Cir. 2009).

In *Hendricks*, we affirmed the district court's grant of summary judgment to the defendant because the plaintiff, who had been passed over for promotion, "offered no evidence sufficient for a jury to conclude that [she] was not selected on the basis of her sex." 156 F.3d at 1291. We observed that "a Title VII discrimination plaintiff cannot prevail by presenting evidence that tends to show the employer's proffered reason is pretextual but also demonstrates that the real explanation for the employer's behavior is not discrimination, but some other motivation." *Id*. at 1013-14. We concluded that the employee's "attempted rebuttal of the proffered reason" there (that she was more qualified than the employee selected for promotion) "at best" fell in the category of "demonstrat[ing] that the real

---

inference that, absent discrimination, she would have been picked for the job.").

explanation for the employer's behavior is not discrimination, but some other motivation." Her evidence, we explained, "support[ed] at most favoritism, not sex discrimination," "suggest[ing] at worst that [the employer] acted for idiosyncratic reasons, not discriminatory ones." *Id*. at 1014. In other words, the reason proffered by the employer may have been false—but the evidence did not demonstrate it shielded a discriminatory motive.

In this case, by contrast, Colbert met her burden under both prongs of the *Brady* standard. The record, viewed in the light most favorable to Colbert, could support a finding that the both reasons proffered for passing her over—that she "wandered" and that she did not meet the specific requirements for promotion—were indeed pretextual and that her employer in fact unlawfully discriminated against her. *See* maj. op. at 6-7. Accordingly, I concur.