# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 23, 2015　　　　　Decided August 18, 2015

No. 14-5035

DANITA M. WALKER,
APPELLANT

v.

JEH CHARLES JOHNSON, SECRETARY OF HOMELAND SECURITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00816)

*Ellen K. Renaud* argued the cause for appellant.  With her on the briefs were *David H. Shapiro* and *Richard L. Swick*.

*Javier M. Guzman*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Ronald C. Machen Jr.*, U.S. Attorney at the time the brief was filed, and *R. Craig Lawrence* and *Jane M. Lyons*, Assistant U.S. Attorneys.

Before: MILLETT and PILLARD, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Danita Walker, an African American woman, sued her employer, the U.S. Department of Homeland Security, claiming under Title VII that her white supervisor, Walter LeRoy, took adverse actions against her on account of her race or because she had previously filed a discrimination complaint against the Department. The alleged adverse actions included charging Walker absent without leave, assigning her an average rating in an annual evaluation, issuing a letter censuring her for missing work and acting in what LeRoy described as an unprofessional manner, and rejecting her application for a promotion. The district court granted summary judgment to the Department. We affirm because the record in this case could not reasonably support a finding that the Department's stated reasons were a pretext for discrimination or retaliation.

**I.**

The summary judgment record shows that Walker worked from 2005 to 2010 as a GS-12-level employee in a unit of Immigration and Customs Enforcement (ICE) within the Department of Homeland Security in Washington, D.C. Her role there was to develop policies for administering ICE's immigration bond program for detained aliens. During most of Walker's tenure, the bond management unit consisted of one supervisor, Walker, and three coworkers: two African American men and one white woman.

LeRoy joined the bond management unit and became Walker's supervisor in March 2008. A month before LeRoy arrived, Walker had filed an administrative complaint of race- and sex-based discrimination against the Department, the allegations of which were wholly unrelated to LeRoy. The parties mediated and settled those claims in May 2008. LeRoy learned of the ongoing mediation on April 7, 2008.

Walker describes her relationship with LeRoy as difficult from the outset. She found LeRoy very abrupt towards her, although not to the point of being rude or disrespectful. Meanwhile, she observed LeRoy as professional and courteous towards her coworkers, including two African American males and one white female. Walker informed LeRoy in May 2008 that she would need to miss work occasionally to care for her ailing mother, who was suffering from Alzheimer's disease. From March to June, Walker was tardy or absent from work at least seventeen days without giving advance notice. LeRoy excused her tardiness and unscheduled absences during that period.

Starting in late June, LeRoy began what Walker characterizes as a pattern of unjustified antagonism toward her. First, on June 25, 2008, LeRoy issued her a Leave Restriction Letter explaining that her use of unscheduled leave posed a problem to the unit and that it was difficult to assign work to her in light of her irregular attendance. The Letter outlined specific procedures that Walker should follow when requesting leave, including whom to call and in what order, and how to identify in her requests the type of leave she sought. The Letter warned that failure to follow its procedures could result in a charge of absent without leave (AWOL).

In October 2008, LeRoy gave Walker her annual performance evaluation for the 2007-2008 fiscal year. LeRoy classified Walker's job performance as within the third-highest of four possible rating categories—one that made it unlikely she would receive a discretionary bonus. Walker's white female coworker received the highest rating, and her two African American male coworkers each received the second-highest.

4

The day she received her performance rating, Walker contacted an Equal Employment Opportunity (EEO) counselor and initiated the complaint that led to this litigation. In the administrative process, Walker alleged sex- and race-based discrimination and retaliation, but she has since abandoned her sex discrimination claim.

At the end of October 2008, and again in February 2009, LeRoy charged Walker as AWOL for what he saw as her failure to adhere to the leave-request procedures outlined in her Leave Restriction Letter. When Walker took sick leave, LeRoy charged, she did not call the people listed in the Letter; rather, she emailed someone who was filling in for LeRoy that day. When she needed to tend to an emergency situation with her mother, LeRoy also faulted Walker for only leaving him a voicemail and not additionally calling the backup contacts as required by the Letter. Walker does not deny that she did not adhere to the Letter's procedures on those occasions.

In February 2009, Walker received a Letter of Reprimand from LeRoy reflecting a determination of ICE's Discipline and Adverse Actions Panel. The Reprimand stemmed in part from Walker's failure to follow her leave-request procedures. It also cited an occasion when Walker, while suffering an asthma attack, interrupted a meeting and gave LeRoy a leave form in what the Reprimand described as an abrupt, impolite, and unprofessional manner.

Finally, in July 2009, Walker was denied a promotion to a position as a Management and Program Analyst. The vacancy announcement solicited applications from employees who would qualify as GS-13 or GS-14. When Walker applied in November 2008, she received a confirmation letter from the Philadelphia branch of the United States Office of

Personnel Management advising that her name had been referred to the selecting official for consideration, and identifying the position as GS-0343-13/14. The following summer, Walker received what appeared to be a standard form letter from that office reflecting that only GS-14 candidates were being considered for the position, and advising that her application had been rejected because she did not have "the required specialized skills needed for this specialty and grade." J.A. 196.

In September 2009, LeRoy received a list of eligible employees from which he was to recommend a selection. All the candidates on that list were at the GS-14 level, whereas Walker qualified as only GS-13. Referring to her receipt of the November referral letter, Walker contends that LeRoy falsely claimed to have received a candidate list of only GS-14 employees. LeRoy recommended a white woman, a GS-14, who was eventually hired, although LeRoy asserts, and Walker does not dispute, that he did not know the candidates' races when he selected her.

Walker also points to other incidents that she contends show LeRoy's discriminatory and retaliatory motive toward her. In April 2009, LeRoy sent her an email faulting her for failing to follow instructions on a work assignment that Walker believed she had completed in a professional and responsive manner. In November 2009, in relation to Walker's submission of a workers' compensation claim for work-related stress, LeRoy responded to an information request from the Office of Workers' Compensation denying that he had ever personally observed her suffering a work-related injury. Walker viewed that as suggestive of discrimination, given that she had told him of her work-related stress and he had seen medical visit documentation of a stress-related asthma attack.

Walker filed suit against the Department in 2011. She alleged that LeRoy took adverse action against her in the spring of 2008 on account of her race or because she had engaged in protected EEO activity. The Department moved for summary judgment, identifying the legitimate, non-discriminatory and non-retaliatory reasons it had proffered for the alleged adverse employment actions and arguing that no reasonable jury could infer discrimination or retaliation from the evidentiary record. The district court granted summary judgment to the Department. Our review is *de novo*. *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc).

## II.

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A movant is entitled to summary judgment when the evidence is such that a reasonable jury, drawing all reasonable inferences in the non-movant's favor, could not return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

Title VII prohibits the federal government from discriminating against employees on the basis of race, 42 U.S.C. § 2000e-16(a), or retaliating against them because they opposed an unlawful employment practice or made a charge under the statute, *id.* § 2000e-3(a); *see Barnes v. Costle*, 561 F.2d 983, 988 (D.C. Cir. 1977) (explaining that Title VII places the same restrictions on federal agencies as it does on private employers).

Discrimination and retaliation claims are subject to the familiar, burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Brady v. Office of*

*the Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008); *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). A plaintiff must first establish her prima facie case. To state a prima facie case of discrimination, a plaintiff must allege she is part of a protected class under Title VII, she suffered a cognizable adverse employment action, and the action gives rise to an inference of discrimination. *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002). For a retaliation claim, the plaintiff must allege that she engaged in activity protected by Title VII, the employer took adverse action against her, and the employer took that action because of the employee's protected conduct. *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012).

If the plaintiff clears that hurdle, the burden shifts to the employer to identify the legitimate, non-discriminatory or non-retaliatory reason on which it relied in taking the complained-of action. *Holcomb v. Powell*, 433 F.3d 889, 896 (D.C. Cir. 2006). Assuming the employer proffers such a reason, the "central question" at summary judgment becomes whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory or non-retaliatory reason was not the actual reason and that the employer intentionally discriminated or retaliated against the employee." *Allen v. Johnson*, – F.3d –, No. 13-5170, 2015 WL 4489510, at *3 (D.C. Cir. July 24, 2015) (brackets omitted) (quoting *Brady*, 520 F.3d at 494); *see also Hamilton*, 666 F.3d at 1351.

A plaintiff may support an inference that the employer's stated reasons were pretextual, and the real reasons were prohibited discrimination or retaliation, by citing the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established

procedures or criteria, or the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive. *Brady*, 520 F.3d at 495 & n.3. The temporal proximity between an employee's protected activity and her employer's adverse action is a common and often probative form of evidence of retaliation. *See Hamilton*, 666 F.3d at 1357-59; *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009). Whether evidence offered to show that an employer's explanation is false itself suffices to raise an inference of unlawful discrimination or retaliation is a fact-sensitive inquiry. *See Aka*, 156 F.3d at 1294 ("[I]t is difficult, if not impossible, to say in any concise or generic way under what precise circumstances such an inference will be inappropriate."). We undertake that inquiry below.

## III.

Walker has failed to identify evidence in the record from which a reasonable jury could conclude that LeRoy's proffered legitimate, non-discriminatory and non-retaliatory reasons for his actions were pretextual and that his real reasons were discriminatory or retaliatory.

Like most Title VII plaintiffs—including those whose claims succeed—Walker lacks direct evidence that her employer acted with a retaliatory or discriminatory motive. *See Allen*, 2015 WL 4489510, at *3 ("Direct evidence of reprisal . . . is the exception rather than the rule."). Walker's case is somewhat distinctive because she worked in a small unit with only three coworkers, two of whom were also African American. By Walker's own account, her African American coworkers were not subjected to the kinds of action that she challenges as racially discriminatory. LeRoy gave

those colleagues higher performance ratings and, according to Walker, was courteous and respectful towards them. The dearth of comparator evidence within her unit does not necessarily doom Walker's claim, but it may well make it more difficult to raise an inference "strong enough to let a reasonable factfinder conclude that discrimination has occurred at all." *Aka*, 156 F.3d at 1291; *see, e.g.*, *Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1080 (D.C. Cir. 1999) (the fact that three-quarters of a plaintiff's fellow employees were older than him "tend[ed] to refute any implication" of age discrimination).

As factual support for her retaliation claim, Walker relies on the same allegations of antagonism that she points to in support of her discrimination claim, plus the temporal proximity between LeRoy learning of Walker's EEO activity on April 7 and his issuing the Leave Restriction Letter on June 25. No inference of retaliation arises on that basis here. We previously rejected as "untenable" "an inference of retaliatory motive based upon the 'mere proximity' in time" between an employee filing a lawsuit, and discipline for unexcused absence two and one-half months later. *Taylor*, 571 F.3d at 1322. The conduct of which Walker complains was not a sudden or marked change. To the contrary, even after LeRoy became aware that Walker had a pending EEO claim, he excused each of Walker's seventeen unscheduled absences or late arrivals. More than three months then passed before he took any other action that Walker characterizes as adverse or retaliatory.

Walker thus recognizes that "the heart of [her] case is the evidence raising an inference of pretext." Appellant Br. 13. She argues that she has shown that LeRoy's stated explanations were false, and that a reasonable jury could thus conclude that the actual reason for his actions was racial bias

or retaliation. She emphasizes our recognition in past cases that evidence that the employer's stated reason is pretextual can be sufficient in itself to give rise to an inference of discrimination or retaliation. *See, e.g.*, *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005); *Aka*, 156 F.3d at 1292. Walker is correct that a plaintiff is not "presumptively required to submit evidence over and above [evidence of pretext] in order to avoid summary judgment." *Aka*, 156 F.3d at 1292. For instance, "[if] the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one . . . may rationally be drawn." *Shager v. Upjohn Co.*, 913 F.2d 398, 401 (7th Cir. 1990). Even then, however, "the inference is not compelled." *Id.*

Because such judgments are contextual, "the plaintiff cannot always avoid summary judgment by showing the employer's explanation to be false." *Aka*, 156 F.3d at 1292; *see also, e.g.*, *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1066-67 (3d Cir. 1996) (en banc) ("[D]isbelief of the defendant's proffered reasons [is a] threshold finding[], beyond which the jury is permitted, but not required, to draw an inference leading it to conclude that there was intentional discrimination."). The evidence of record must be such that a reasonable jury could not only disbelieve the employer's reasons, but conclude that the real reason the employer took a challenged action was a prohibited one. We thus held that an employer's "admi[ssion] to having lied" about why it failed to hire a black applicant, together with evidence that the employer lacked knowledge about the applicant's experience and that its hiring practices "were generally inhospitable to minorities," could support an inference that the employer was hiding a true, discriminatory motive. *Colbert v. Tapella*, 649 F.3d 756, 760 (D.C. Cir. 2011).

The evidence on which Walker relies in this case could not support a finding that the employer's proffered reasons were untrue, and thus, *a fortiori*, could not support an inference that her employer was hiding a prohibited motive. Walker attributes her "achieving expectations" performance rating to her race because, in her view, she "was doing so much more than [she] needed to do in [her] position and [she] was going out of [her] way above and beyond," and "there was absolutely no other reason for [LeRoy] not to acknowledge all the effort that [she] put forth." J.A. 306-07 (Walker Dep.). LeRoy's rating of Walker was, however, equivalent to the "fully successful" rating she received from a different supervisor the preceding year under the Department's old rating system. Walker also identifies nothing in the record suggesting that LeRoy did not genuinely and reasonably believe he made the right decision in the performance rating. Assessment of job performance often involves myriad contestable judgments, but Walker points to nothing other than her own opinion of her performance to dispute LeRoy's evaluation. In light of the other evidence in this case, including Walker's acknowledged absences and LeRoy's determination that her unreliable attendance was interfering with his ability to manage work flow, Walker's own personal opinion is inadequate by itself to create an issue for the jury. *See Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011) ("It is settled that 'it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'" (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000))).

Walker also invokes what she calls LeRoy's inconsistent accounts of an incident, cited in the Letter of Reprimand, in which Walker came into a meeting to give LeRoy a leave slip. Walker argues that variation between the respective descriptions of the incident offered by LeRoy, other

participants in the meeting, and the Letter of Reprimand render LeRoy's explanation implausible and would permit a reasonable juror to infer that he was covering up an unlawful motive. "[S]hifting and inconsistent justifications are 'probative of pretext.'" *Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011). Here, however, there are only minor variations in the descriptions—Walker "drop[ped]" or "tossed (with emphasis)" or "swiftly placed" or "slammed" the leave slip on the desk—and every account describes Walker as terse and abrupt. J.A. 150-52, 458. Such fine descriptive differences between materially consistent accounts, without more, do not tend to make the accounts unworthy of belief, let alone support an inference of discrimination or retaliation.

Walker also asserts that there is a material issue of fact in dispute over whether her name was among those referred to LeRoy for his hiring recommendation. She contends that evidence showing that she, qualifying for a GS-13 position, was identified as a potential candidate gives the lie to LeRoy's explanation that only GS-14 candidates were considered. Walker contends that he was not being truthful about the composition of the list and the real reason that he did not recommend Walker was her race or EEO activity. Her only evidence in that regard is a November 2008 message from a Philadelphia personnel office, which stated that her application was received and her name had been referred for further consideration. The Philadelphia office, however, passed over Walker's application for lack of requisite qualifications in July 2009, two months before LeRoy received the list and made his decision. There is thus no basis for any reasonable inference that Walker's name was on the list that LeRoy received for consideration when he made his decision in September 2009. Walker points to an unchecked box on the selection form that contemplates the possibility of the official making a choice based on something other than

the preceding list of candidates. The box that was checked, however, reflects that the selection was made from the list. Walker's mere speculation that LeRoy could also have had in front of him a list of GS-13 candidates with her name on it does not present a genuine dispute of material fact.

Walker asserts that LeRoy sought to curtail her ability to care for her ailing mother by exercising his discretion to charge her AWOL when she took leave to care for her mother in an emergency. Putting aside that the record does not show that LeRoy was aware of the details of that situation, and that, as Walker acknowledges, LeRoy had excused past occasions on which Walker was absent without notice and later asserted that she was away to care for her mother, Walker's contention at most supports a conclusion that LeRoy was willing to enforce procedures for obtaining leave authorization; it does not impugn the veracity of LeRoy's reason or evince unlawful motive.[1]

For all of those reasons, we affirm the judgment of the district court that Walker failed to point to evidence capable of supporting an inference of discrimination or retaliation.

Two portions of the district court's opinion concerning whether the alleged employment actions were cognizably adverse warrant some clarification. First, to the extent that the district court suggested that Walker was obligated to make a "threshold showing" that her 2008 performance rating was

---

[1] Walker makes passing reference to a white man whose requests for leave had been approved, but she could not provide any details surrounding his situation that might show that she was similarly situated to him, and she could not say whether LeRoy ever supervised him.

*lowered* from (and not equivalent to) the prior year's for it to qualify as cognizably adverse, *see* J.A. 64, that suggestion should not be taken to insulate from challenge a discriminatory or retaliatory denial of a deserved *rise* in performance rating. Whether an assessment is adverse does not hinge on whether it was lowered; rather, the question is whether discrimination or retaliation caused a significant, tangible harm. *See Douglas v. Donovan*, 559 F.3d 549, 552-53 (D.C. Cir. 2009). Proof that a rating unchanged from a prior period was nonetheless materially adverse could be difficult, but cannot categorically be ruled out. An employee whose volume and quality of work demonstrably improved, or who had significant difficulties at work in the prior period that she had overcome, might fairly deserve a significantly improved rating and would be materially harmed if discrimination prevented appropriate recognition.

Second, insofar as the district court suggested that, even if LeRoy had acted with an illicit motive, that motive was rendered inoperative because it was the disciplinary committee, not LeRoy, that issued the Letter of Reprimand, and Walker did not establish that the committee knew of her race or prior EEO activity, *see* J.A. 65, 73, the court erroneously overlooked established law on "cat's-paw" discrimination. Under a cat's-paw theory, a formal decision maker may be an unwitting conduit of another actor's illicit motives. *See Griffin v. Wash. Convention Ctr.*, 142 F.3d 1308, 1311-12 (D.C. Cir. 1998); *see also Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011) ("[A] supervisor's biased report may remain a causal factor if the [ultimate decision maker's] independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified."); *Hampton v. Vilsack*, 685 F.3d 1096, 1101-02 (D.C. Cir. 2012). If the disciplinary committee was independent of and

insulated from LeRoy's influence, that break in the chain would have rendered inoperative any illicit motive LeRoy might have had regarding the discipline. If, however, LeRoy played a role informing the committee about Walker and her conduct, the committee becomes "the conduit of [his] prejudice—his cat's-paw." *Griffin*, 142 F.3d at 1311-12 (quoting *Shager*, 913 F.2d at 405); *see also Staub*, 562 U.S. at 421-22. Because it appears that LeRoy played an integral role in informing the disciplinary committee, we do not rely on the theory that its action rendered LeRoy's motive irrelevant.

\* \* \*

Plaintiffs may survive summary judgment based solely on evidence of pretext when the evidence is such that a reasonable jury not only could disbelieve the employer's reasons, but also could conclude that the employer acted, at least in part, for a prohibited reason. The evidence in this case, however, could not support a finding of pretext. We therefore affirm the judgment of the district court.

*So ordered.*