Kharii Wilston Anthony
BRODIE, Appellant

v.

Brent JACKSON, Appellee.

No. 14–7099.

United States Court of Appeals,
District of Columbia Circuit.

Nov. 13, 2015.

Rehearing Denied Dec. 15, 2015.

Kharii Wilston Anthony Brodie, Silver Spring, MD, pro se.

David Drake Hudgins, Esquire, Hudgins Law Firm, P.C., Alexandria, VA, for Appellee.

Before: GRIFFITH and MILLETT, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

### *JUDGMENT*

PER CURIAM.

This appeal was considered on the briefs of the parties and the record from the United States District Court for the District of Columbia. *See* FED. R.APP. P. 34(a)(2); D.C. CIR. RULE 34(j). The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. RULE 36(d). It is

**ORDERED AND ADJUDGED** that the judgment of the district court is affirmed for the reasons stated herein.

In the mid–1990s, Kharii Brodie was involved in a "mortgage flipping" scheme in Washington, D.C. Brodie would purchase distressed properties through his company, Inter Communication Network,

Inc., of which he was the president, chief executive officer, and sole employee. The company would then sell the properties to Brodie for significantly increased prices. Brodie, in turn, would obtain fabricated property appraisals to support the artificial sales prices, and use those appraisals and other forged documents to apply for mortgage loans. After receiving the loan proceeds, Brodie would reimburse his company for the initial purchase price and pocket the remainder for himself. *See United States v. Brodie*, 524 F.3d 259, 261–262 (D.C.Cir.2008).

But Brodie eventually got caught, and he was convicted in 2005 of three counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of conspiracy to make false statements to financial institutions to obtain mortgage loans, in violation of 18 U.S.C. § 371. This court affirmed his conviction. *Brodie*, 524 F.3d at 274. In that decision, we rejected Brodie's claim that his counsel had been ineffective in failing to move for a judgment of acquittal under Federal Rule of Criminal Procedure 29. Because "the evidence of Brodie's guilt was overwhelming," we explained, "Brodie was not prejudiced by his counsel's failure[.]" *Id.* at 273; *see generally Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Three years later, Brodie filed this malpractice action against Brent Jackson, the attorney who represented him at his criminal sentencing. As relevant here, Brodie alleged that, in obtaining the indictment, the prosecutor falsely told the grand jury that Brodie had misrepresented his citizenship, income, and employment status on the mortgage applications he submitted to banks as part of his "mortgage flipping" scheme. Brodie also argued that his trial attorney (Jackson's predecessor) had stipulated to the truth of those and other misrepresentations at trial without Brodie's knowledge. Brodie alleged that Jackson should have moved for acquittal

"or take[n] other appropriate legal actions in [his] defense" because of the false statements and stipulations. App. Ex. 34. Brodie further alleged that he was unaware of those purported misrepresentations until his release from prison in 2009 because Jackson did not review the file and transcripts with him while he was incarcerated. Nor did Jackson return Brodie's entire case file to him at the conclusion of representation in 2005. Brodie contended that Jackson's failure to review or timely return the files prevented him from timely challenging those misrepresentations.

The district court granted Jackson's motion for judgment on the pleadings, holding that Brodie's claims were barred by collateral estoppel in light of our holding in his criminal appeal that the "overwhelming" evidence of his guilt precluded a showing of prejudice from his counsel's failure to move for acquittal. On appeal, this court remanded the case for further consideration of whether collateral estoppel barred the entirety of Brodie's complaint. Order, ECF No. 1470416, *Brodie v. Jackson*, No. 13–7113 (D.C.Cir. Dec. 13, 2013). In particular, this court concluded that the claims relating to Jackson's retention of and failure to review Brodie's file "are independent of appellant's arguments concerning the motion for acquittal, and have not been submitted for judicial determination in a prior proceeding." *Id.* (citing *Yamaha Corp. of America v. United States*, 961 F.2d 245, 254 (D.C.Cir.1992)). We also noted that Jackson's failure to timely provide Brodie with his file "may have deprived [him] of a 'full and fair opportunity' to litigate in a prior proceeding the issue of [Jackson's] failure to file a motion for acquittal." *Id.* (citing *Martin v. Malhoyt*, 830 F.2d 237, 264 (D.C.Cir.1987)).

On remand, the district court granted summary judgment for Jackson. Review-

ing the grant of summary judgment *de novo*, we affirm. *See Coleman v. District of Columbia*, 794 F.3d 49, 57 (D.C.Cir. 2015).

■ To make out a case of legal malpractice under District of Columbia law, Brodie had to come forward with evidence from which a reasonable jury could conclude that, *inter alia*, Jackson's alleged missteps "caused a legally cognizable injury." *Kaempe v. Myers*, 367 F.3d 958, 966 (D.C.Cir.2004) (citation omitted). In other words, to avoid summary judgment, Brodie had to identify evidence from which a reasonable jury could conclude that, but for Jackson's conduct, Brodie "would have had [a] judgment" in his favor in his criminal case. *Hobley v. Law Office of S. Howard Woodson, III*, 983 A.2d 1000, 1002 n. 3 (D.C.2009) (citation and internal quotation marks omitted). Viewing the facts and record in the light most favorable to Brodie, as we must at this juncture, *see, e.g., Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C.Cir.2015), we hold that Brodie has failed that task.

*First*, Brodie can show no "legally cognizable injury" from Jackson's failure to challenge his indictment. Brodie claims that Jackson should have sought an acquittal because the government withheld exculpatory evidence from the grand jury concerning his income and employment status, and his company's income tax filings for some of the years during which he was operating his "mortgage flipping" scheme. Even assuming that Brodie is correct about those alleged withholdings, he has suffered no prejudice because the

Supreme Court has expressly held that a facially valid indictment may not be dismissed on the ground that the government failed to disclose "substantial exculpatory evidence" in its possession to the grand jury. *See United States v. Williams*, 504 U.S. 36, 45–46, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992); see also *Kaley v. United States*, ——— U.S. ———, 134 S.Ct. 1090, 1097, 188 L.Ed.2d 46 (2014) (reaffirming the "often recognized" rule that "a challenge to the reliability or competence of the evidence supporting a grand jury's finding of probable cause will not be heard") (citation and internal quotation marks omitted).*

*Second*, Brodie claims that the government made misrepresentations to the grand jury to secure his indictment. But even assuming that acquittal would have been available on that basis at such a late stage in his criminal case, he would have had to show "that the prosecutors knew the evidence to be false or misleading." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). He has utterly failed to come forward with colorable evidence showing that the prosecutors' conduct was knowing or intentional. The record is similarly devoid of any evidence suggesting that the government's alleged misstatements concerning his citizenship, employment status, or income would have had any bearing on or "substantially influenced the grand jury's decision to indict" for a fraud that centered on the false pricing of properties. *Id.* at 256, 108 S.Ct. 2369 (internal quotation marks omitted). We accordingly have no doubt, let alone "grave doubt," that the

---

* Although *Williams* squarely bars this claim, we note too that the purportedly exculpatory IRS documents are equivocal at best. *See* Appellant's Br. 13–15; App. Ex. 15, Ex. 16, Ex. 29. They say nothing about Brodie's employment status during the period in question, do not substantiate the income amounts he reported on various loan applications, and

nowhere suggest that Inter Communication Network, Inc. ever filed W–2 forms on Brodie's behalf. Accordingly, even if Brodie could have challenged his indictment based on the government's alleged failure to disclose these documents to the grand jury, the motion would have had no realistic prospect of success.

4

decision to indict was "free from the substantial influence" of the government's alleged misrepresentations. *Id.; see also id.* at 254, 108 S.Ct. 2369 ("[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants."); *cf. United States v. Basurto,* 497 F.2d 781, 785 (9th Cir.1974) (Due process forbids forcing a defendant to stand trial based on an indictment that "the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached."). In the absence of any such evidence, Brodie's bald claim that he was injured by Jackson's failure to file an acquittal motion that had no prospect of success cannot survive summary judgment. *See District Intown Props. Ltd. P'ship v. District of Columbia,* 198 F.3d 874, 878 (D.C.Cir.1999) (court will not credit "conclusory allegations lacking any factual basis in the record" at summary judgment).

■ *Third,* Brodie suffered no "legally cognizable injury" from Jackson's failure to review the case file with him or to challenge the false trial stipulations. To begin with, Brodie claims that Jackson's predecessor wrongly stipulated at trial that Brodie was not a United States citizen. But even viewed in the light most favorable to Brodie, the record contains no evidence suggesting that the stipulation was inaccurate. The most that Brodie offers is some evidence suggesting that he acquired United States citizenship at some point *after* his conviction, which of course was long after the stipulation was made and the jury had deliberated.

Brodie also claims that, had Jackson reviewed the file with him, Brodie would have discovered that his trial counsel wrongly stipulated that the Internal Revenue Service had no record of a company called Inter Communication Network, Inc.

that was assigned the particular taxpayer identification number listed in documents associated with the "mortgage flipping" scheme. But the record makes clear that Brodie's counsel never made any such stipulation. Instead, the parties stipulated that "Inter Communications Network, Inc., taxpayer identification number 52–1919394 did not file wage and tax statements for the taxpayers of 1994 and 1995." S.A. 758; *see also id.* at 759 (district court's limiting instruction relating to stipulation). Brodie has produced no evidence that would call the accuracy of that stipulation into question. In any event, Brodie makes no colorable showing—nor could he—that a challenge to his conviction premised on the falsity of such a technical stipulation would have had any effect on his conviction given the "overwhelming" evidence of his guilt. *See United States v. Rogers,* 918 F.2d 207, 213 (D.C.Cir.1990) ("A judgment of acquittal is appropriate only when there is *no* evidence upon which a reasonable juror might fairly conclude guilt beyond a reasonable doubt.") (emphasis in original, internal quotation marks and citation omitted).

Accordingly, Jackson was entitled to summary judgment on all of Brodie's remaining claims because, even if Jackson had erred by failing to move for acquittal, to timely return Brodie's file, or to adequately review Brodie's case file, none of those failings could plausibly have made any difference to the outcome of his criminal case. He thus has not suffered the type of "legally cognizable injury" needed to demonstrate malpractice.

The judgment of the district court is therefore affirmed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or

rehearing en banc. *See* FED. R.APP. P. 41(b); D.C. CIR. R. 41(a).