# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 9, 2025          Decided April 10, 2026

No. 24-5201

SUSAN QASHU, PH.D., ALSO KNOWN AS PAMALA L.,
APPELLANT

v.

MARCO RUBIO,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-01077)

———

*Natasha R. Khan* argued the cause for appellant. On the briefs were *Joanna Wasik*, *Madeleine Gates*, *Regina Wang*, *Brian Wolfman*, and *Jonathan Corn*, and *Morgan F. Flitt*, *Matt Grabianski*, *Sara Brizio*, *Shreya Sarin*, and *Grace Seifert*, Student Counsels. *Ryan C. Downer* entered an appearance.

*Johnny H. Walker*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *Jane M. Lyons*, Assistant U.S. Attorney. *Lshauntee J. Robertson*, Assistant U.S. Attorney, entered an appearance.

Before: SRINIVASAN, *Chief Judge*, WALKER, *Circuit Judge*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: Susan Qashu sued the Department of State for a failure to accommodate her disability, discrimination based on that disability, and retaliation for her disability-related complaints.

The district court granted summary judgment to the State Department.

We affirm.

## I. Background

The American Association for the Advancement of Science promotes "science, engineering, and innovation throughout the world for the benefit of all." *Mission and History*, American Association For The Advancement Of Science, https://perma.cc/4FTE-A9VU. Among its many programs is a fellowship at the State Department. The fellowship lasts one year, with the possibility of a second year if mutually desired by AAAS, the State Department, and the fellow.

The State Department hired Susan Qashu as an AAAS fellow to begin in February 2016. Because Qashu is visually impaired, the State Department's Disability and Reasonable Accommodation Division provided her with several accommodations. The accommodations included software to help Qashu read her computer screen, and noise-cancelling headphones to help her hear the software read to her.

Qashu's year did not go well. She says the State Department gave her screen-reading software that did not work well enough and then failed to promptly provide her with people to read aloud from her computer screen. The State Department also placed her in an office that was not sufficiently quiet, and the noise interfered with the use of her screen-reading software. In addition, she claims her supervisor "berated" her and "screamed" at her. JA 245.

In June 2016, Qashu received a letter from AAAS offering to renew her fellowship for another year, beginning next February. AAAS asked her to sign and return the renewal paperwork by June 10. When Qashu proposed delaying the return of the renewal paperwork until June 16, AAAS agreed. But after proposing several changes to the renewal paperwork over the next several weeks, Qashu did not return it.

The State Department and AAAS eventually decided to rescind her renewal offer. A new letter from AAAS, dated July 19, noted that the deadline to submit renewal paperwork had passed "more than a month ago" and that discussions with Qashu and the State Department showed their interests were "not aligned to result in a mutually beneficial renewal year." JA 231.

In August 2016, halfway through her fellowship year, Qashu filed a formal complaint with the State Department's Office of Civil Rights. In it, she alleged discrimination based on her disability and reprisal. Her evidence included an email documenting demeaning comments by her supervisor, the denial of professional opportunities, and the rescission of her renewal offer.

About seven weeks later, Qashu met with colleagues to discuss the departure of the leader of an ocean-acidification

portfolio. When asked directly, Qashu did not recommend herself to take the departing leader's place. Nor did anyone else recommend her. And the State Department later made a different fellow the leader.

Around the same time, on September 26, Qashu emailed the Director of the Disability and Reasonable Accommodation Division to compliment their work. Qashu said they had accommodated her "COMPLETELY" and "BEAUTIFULLY." JA 196.

Qashu later made several accommodation requests in October and November 2016. In October, she renewed a request from earlier in the spring for an office space away from loud office equipment and talkative co-workers. In November, she requested help to have someone read what was being displayed on her computer because her adaptive software was not working. She also reported issues with her computer shutting down, not displaying the login screen correctly, and making a "grinding" sound. JA 465.

A little more than five years after her fellowship ended in February 2017, Qashu sued the State Department. She alleged mistreatment related to her disability in violation of the Rehabilitation Act. That Act incorporates the standards of the Americans with Disabilities Act and applies them to federal employees. 29 U.S.C. § 791(f).

In her complaint, Qashu said that the State Department failed to accommodate her disability. She also said that the State Department discriminated against her in a manner similar to the discrimination alleged in her August 2016 administrative complaint. And she said that the State Department retaliated against her for requesting an accommodation and for filing her administrative complaint.

The district court awarded summary judgment to the State Department.

## II. Standard of Review

The court reviews the district court's grant of summary judgment de novo. *Ramos v. Garland*, 77 F.4th 932, 934 (D.C. Cir. 2023). All evidence will be viewed "in the light most favorable to the nonmoving party." *Minter v. District of Columbia*, 809 F.3d 66, 68 (D.C. Cir. 2015) (cleaned up).

## III. Analysis

Under the standards of the Americans with Disabilities Act, incorporated by the Rehabilitation Act, federal agencies may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also* 29 U.S.C. § 791(f).

Qashu argues that by failing to accommodate her, discriminating against her, and retaliating against her, the State Department violated the Rehabilitation Act.

We hold that it didn't.

### A. The State Department Did Not Deny a Reasonable Accommodation Request by Qashu

To show that an employer failed to accommodate a disability, an employee must first prove that (1) the employee is disabled, (2) the employer knew of the disability, and (3) the

employer denied the employee's request for a reasonable accommodation. *Ali v. Regan*, 111 F.4th 1264, 1268-69 (D.C. Cir. 2024); *see also Barth v. Gelb*, 2 F.3d 1180, 1187 (D.C. Cir. 1993) ("a reasonable accommodation is one employing a method of accommodation that is reasonable in the run of cases" (emphasis omitted)). The employee has the "initial burden" of showing that the preferred accommodation is possible. *Carter v. Bennett*, 840 F.2d 63, 65 (D.C. Cir. 1988). The burden then shifts to the employer to demonstrate that the employee's accommodation request would impose "undue hardship" on the employer. *Ali*, 111 F.4th at 1269 (quoting 42 U.S.C. §§ 12111(10)(A), 12112(b)(5)(A)). This burden is met if the employer offers an accommodation "that is reasonable, even if it is not the one preferred by the employee." *Id.*

In this case, the first two elements are undisputed. Qashu is disabled. And the State Department knew of her disability.

That leaves the third element — whether the State Department denied a request by Qashu for a reasonable accommodation.

A request for a reasonable accommodation requires an exchange of information between the employer and the employee, known as the "interactive process." *Ali*, 111 F.4th at 1274. The "interactive process" is the "back-and-forth between employer and employee" that should result in enough information for the employer to "'determine the appropriate reasonable accommodation.'" *Id.* (quoting 29 C.F.R. § 1630.2(o)(3)). However, the interactive process is "not an end in itself." *Id.* (cleaned up). "It is a means to the end of determining what reasonable accommodations are available" that will allow the requestor to perform essential job functions. *Id.* (cleaned up). In order to prove that an employer denied a request for a reasonable accommodation, the plaintiff must

demonstrate that the employer "ended the interactive process or that it participated in the process in bad faith." *Minter v. District of Columbia*, 809 F.3d 66, 69 (D.C. Cir. 2015) (cleaned up).

### 1. February 2016 to September 2016

We do not need to dwell on Qashu's accommodation requests from early-February 2016 to late-September 2016.[1] That's because, on September 26, Qashu complimented the Disability and Reasonable Accommodation Division for accommodating her "COMPLETELY" and "BEAUTIFULLY." JA 196. So for the time before September 26, no reasonable jury could find that the State Department denied Qashu's reasonable requests for accommodations. Even if Qashu had concerns about other aspects of her treatment on the job, the record makes clear that her concerns did not relate to the Department's participation in the interactive process concerning her accommodations: Qashu's August 2016 EEO complaint does not contain allegations concerning any failure of accommodation (but only alleges discrimination and retaliation).

### 2. October 2016 to February 2017

Qashu claims that three requests were denied after September 2016.

First, in October, Qashu renewed a request for a quieter office, which she had previously requested in the spring. But

---

[1] Qashu asserts that she made accommodation requests for shared office equipment. However, Qashu fails to identify what accommodations she requested or when she made any requests involving the shared office equipment.

that claim fails because the State Department moved her to a new, quiet office later in the month. And in the interim, Qashu had the use of noise-cancelling headphones, which the State Department provided when she first started. *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) ("the employer need only provide some reasonable accommodation") (cleaned up).

Second, Qashu requested readers — people who would read aloud to her because the screen-reading software on her computer did not work well enough. But that claim fails because the State Department provided her with readers when they were available. Though weeks sometimes passed before a reader could assist Qashu, the State Department had to balance her requests with the requests of other visually impaired employees. And it had already provided Qashu with screen-reading software, imperfect though the software was.

Lastly, Qashu argues that the State Department denied a reasonable accommodation for a desktop computer that could run two adaptive software applications, Zoomtext and JAWS, without issues.[2] But the record demonstrates that the State Department worked diligently with Qashu to fix her desktop throughout her fellowship. Even though some problems took time to resolve, causing frustrating lapses in functionality, Qashu has not met her burden in demonstrating that the State Department ended the interactive process or operated in bad faith. And Qashu admits that the State Department ultimately resolved the adaptive software issues in November 2016.

---

[2] Though Qashu also contends that she made requests for alternative meeting notifications on her desktop, Qashu does not point to any notification-related requests after her first two months on the job.

We do not fault Qashu for preferring a quiet office before October, readers sooner than she received them, and a faster response from IT. But disability law requires reasonable, not perfect, accommodations. *See Ali*, 111 F.4th at 1286 (Randolph, J., dissenting); *see also Noll v. International Business Machines Corp.*, 787 F.3d 89, 95 (2d Cir. 2015) ("employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee"). And no reasonable jury could find that the State Department denied a reasonable accommodation when it participated in good faith in an interactive process to resolve Qashu's concerns.

## B. The State Department Did Not Discriminate Against Qashu

To show disability discrimination, a plaintiff must show that she "suffered an adverse employment action . . . because of" her disability. *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). Once the plaintiff makes her prima facie case, the burden shifts to the employer to prove that the adverse action was taken "for a legitimate, nondiscriminatory reason." *Holcomb v. Powell*, 433 F.3d 889, 896 (D.C. Cir. 2006). If the employer offers such an explanation, a plaintiff can counter by demonstrating that the employer's stated reasons were pretextual. *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015).

Here, Qashu identifies two allegedly adverse employment actions. The first is the State Department's decision to rescind its offer to renew Qashu's fellowship. The second is its

decision not to make Qashu the leader of an ocean-acidification portfolio.[3]

Both discrimination claims fail. The State Department has articulated legitimate, nondiscriminatory reasons for its allegedly adverse actions. And no reasonable jury could find that those reasons were pretextual. *Id.*

### 1. The Decision to Rescind Qashu's Renewal Offer

Recall that the State Department at first agreed to renew Qashu's fellowship. Qashu does not deny that this was a bona fide renewal offer. And when Qashu objected to several terms in the initial renewal letter, the State Department agreed to "modify the language" to address her concerns. JA 228. Yet Qashu never responded to the updated offer, despite the State Department's request that she "confirm" that she was "on board." *Id.* A week later, the State Department rescinded its offer.

The State Department rescinded Qashu's offer because it concluded Qashu was not sufficiently interested in continuing the fellowship. That is a legitimate, nondiscriminatory reason. And for two reasons, no reasonable jury could conclude that Qashu has shown that the State Department's reason was pretextual.

First, people eager to continue a fellowship don't usually fail to promptly accept an updated renewal offer that addresses their previously expressed concerns, especially when the original deadline has been extended by more than a month.

---

[3] Qashu also argues that there was a change in her responsibilities after the ocean-acidification portfolio was assigned to a different fellow, but the record indicates otherwise.

Qashu has never claimed that she did not receive the email agreeing to her requests or did not have an opportunity to accept the updated offer before it was revoked. Second, if the State Department had been inclined to discriminate based on Qashu's disability, it would not have offered to renew her fellowship in June 2016 when it was already well aware of Qashu's vision impairment and the myriad ways that it made her job more difficult. In other words, something changed between June and July, and it wasn't Qashu's disability.

## 2. The Decision Not to Give Qashu The Ocean-Acidification Portfolio

The State Department also offers a legitimate, nondiscriminatory reason for not assigning Qashu to lead the ocean-acidification portfolio: No one, including Qashu herself, proposed that she take on that role. And here again, no reasonable jury could find that the State Department's reason was pretextual. It is not reasonable to fault an employer for failing to select an employee who does not recommend herself during a discussion about the selection.[4] In addition, the record belies Qashu's claim that her ocean-acidification duties

---

[4] Qashu argues that the unpleasant conduct of one of her supervisors, Dave Sohier, is evidence of discriminatory animus that could demonstrate pretext. But Sohier played no role in reassigning the portfolio. Qashu also asserts that Sohier's supervisor, Evan Bloom, demonstrated animus by turning his back to Qashu whenever she entered his office. But while rude, that is not enough for a jury to infer discrimination, especially considering that Bloom came to Qashu's defense at other times, stating that "she was good enough to continue for a second year." JA 396. *Cf. Hairston v. Vance-Cooks*, 773 F.3d 266, 274 (D.C. Cir. 2014) (holding that certain statements were not "infused with racial undertones based on common usage" and were insufficient to infer discriminatory intent).

dramatically changed, which further undermines an inference that her supervisors were intent on discriminating against her.

## C. The State Department Did Not Retaliate Against Qashu

Retaliation claims are subject to the same burden-shifting framework as discrimination claims. *Walker*, 798 F.3d at 1091. A plaintiff must first show that she suffered a materially adverse employment action because "she had brought or threatened to bring a discrimination claim." *Baloch*, 550 F.3d at 1198. Then the employer may rebut the plaintiff's prima facie case by identifying the legitimate, non-retaliatory reason for its decision. *Walker*, 798 F.3d at 1092. The plaintiff may then attempt to demonstrate that the employer's reason was pretextual. *Id.*

Qashu claims that the State Department rescinded her renewal offer because she requested an accommodation. But she does not identify which accommodation request allegedly prompted retaliation. Even if she had, as we have already held, no reasonable jury could find pretext in the nondiscriminatory reason given by the State Department for rescinding her renewal — i.e., apparent lack of interest in the renewal. *Supra* III.B.1.

Qashu also claims that the State Department denied her the ocean-acidification portfolio and hired her colleague because she filed an administrative complaint alleging discrimination. But here again, our holding above forecloses Qashu's claim. No reasonable jury could find pretext in the State Department's nondiscriminatory reason for not assigning her the portfolio — that reason was her failure to recommend herself at a meeting where recommendations were solicited. *Supra* III.B.2.

13

\* \* \*

We affirm the district court's decision.

*So ordered.*